#### IN THE

# COURT OF APPEALS

#### OF THE

## STATE OF NEW-YORK,

### SEPTEMBER TERM, 1855.

---

## HEGEMAN *against* THE WESTERN RAILROAD CORPORATION

The degree of precaution, care and skill required of a carrier of passengers by stage coaches, in the preparation and management of the means of conveyance, is not a test of that which is required of those engaged in transporting persons at a high rate of speed, by means of steam power, upon a railway.

Whether a railroad company manufactures the cars and engines used in transporting passengers, or procures them from others, it is responsible that the utmost precaution, care and skill have been exercised in their construction to render them sufficient and safe.

Where a passenger in a railroad car was injured by the breaking of one of the axles in consequence of a latent defect, which could not be discovered by the most vigilant external examination; *Held*, that the company was responsible to him for damages, although it purchased the car from extensive and skillful car makers, and the axle was procured from a manufacturer of skill and reputation, if the defect could have been discovered in the process of manufacturing the axle or car by the application of any test known to men skilled in such business.[1]

---

[1] And see *Alden* v. *New York Central Railroad Co.*, 26 N. Y. 102. *Caldwell* v. *New Jersey Steamboat Co.*, 47 Ibid. 282. But a carrier of passengers is not liable for an accident resulting from a defect not discoverable by human prudence and caution. *Crogan* v. *New York and Harlem Railroad Co.*, 18 Alb. L. J. 70. *Redhead* v. *Midland Railway Co.*, 8 Best & Smith 371 ; s. c. 9 Ibid. 519. Nor for the fracture of a rail from extreme cold. *McPadden* v. *New York Central Railroad Co.*, 44 N. Y. 478.

3 KERN.—1

Hegeman *against* The Western Railroad Corporation.

It is a question for the jury to decide, whether, upon the evidence, a railroad company is guilty of negligence in not ascertaining the utility of and adopting an improvement to protect passengers from injuries by accidents to which the cars are liable.

Hegeman *v.* Western Railroad Corporation, 16 Barb. 353, affirmed

THE action was brought to recover damages for injuries to the person of the plaintiff, alleged to have been caused by the negligence of the defendant. The cause was tried at the Rensselaer county circuit, held by justice Wm. F. Allen, in October, 1852. The plaintiff proved that the defendant was the proprietor of a railroad extending from Greenbush to Boston; that in September, 1850, the plaintiff was a passenger on the railroad, having taken the train at Greenbush for Boston; and when near Hinsdale, Massachusetts, an axle of the car in which he was riding broke, and three of the passengers in the car were killed and the plaintiff was seriously and permanently injured. The plaintiff rested his case on proving the accident and the injury to him.

On the part of the defendant it was proved that the track of the railroad was in good order, and that the train was manned by a competent and skillful conductor, engineer and brakemen; that at the time of the accident the train was going at the rate of from twenty-five to thirty miles an hour, being the ordinary speed of passenger trains; and when the accident occurred, the employees of the defendant were at their appropriate places, and the train was stopped as soon as possible after the axle broke. The conductor, who was in charge of the train at the time, testified that the car which broke had been run upon the road about sixteen months; that it was new when it came into his train; that it was built at Springfield by the Springfield Car and Engine Company; that it was an excellent car and was used only during the summer months, as they did not wish to deface it by putting stoves in it. Another witness testified that he had been in the employ of the defendant thirteen years, and was at the time of the trial; that during the first nine years

Hegeman *against* The Western Railroad Corporation.

he had charge of the machinery and the running of trains, and during the last four years he was superintendent of the defendant's road; that the car in question was ordered by one Barnes, his predecessor, in January, 1848, and was delivered to the defendant the last of June in that year; that it was a part of the witness' business to examine the car, and that he did so before it was accepted by the company; that he saw the car repeatedly while it was being built, and examined it thoroughly before it was used upon the road, and that the workmanship and materials were of the best quality; that he did not know of what quality of iron the axles were made; but that the contract with the Springfield Car and Engine Company, was, that they should be of the best of Ames' axles, and of Salisbury iron; that at the time this car was constructed he was familiar with the cars used on the principal railroads in New England, and that the size and form of this axle were the same as those in use on other roads; that Ames' axles were among the best in New England, and that Salisbury iron was considered the best in the country; that the car had been run about sixteen months and laid up during two winters, and that it was safe to run axles that length of time; that the company had persons in its employ at Greenbush, Springfield and Boston, whose duty it was to examine each passenger car carefully before the starting of each train; that at the time of this accident one Stowell was thus employed at Springfield, and one Crandall at Greenbush, and that they were competent and careful men for the business in which they were employed; that the defendant's road had been in operation since 1839, and that but one axle had broken under a passenger car prior to 1850. This witness further testified that he was present when the broken axle in question was taken from under the car, and that he then examined it; that it was broken about eleven inches inside of the wheel and about sixteen inches from the centre of the axle, and that he saw nothing indicating that there had been any external defect in the axle, and that he thought the iron was of the

best quality; that one of the other axles of the broken car was bent nearly into the form of an S, and another of them was bent a little; that portions of the broken axle were tested, after the accident, to try the quality and strength of the iron, by the witness and other persons whom he named. On his cross-examination, he testified that the defendant was not in the habit of applying any tests to axles used in constructing its cars; that they were accustomed to examine for flaws, but that they did not separate the axles from the trucks for the purpose of making the examination, and they condemned them for the least flaw discovered; that there was an article called a safety beam attached to cars, and that it was intended to hold the wheel and axle in its place in case the latter should break; that the cost of the safety beam was $75 per car, and that the defendant had none of them in use in 1850; that the defendant commenced using them in 1851; that he, the witness, could not say of his own knowledge, that the safety beam was in use prior to 1850, nor could he state when he first heard of them. On his further direct examination he testified, that he knew of no test to apply to car axles; that he never saw a safety beam in use prior to June, 1851, when they were put on some of the defendant's cars, and that he should have seen them if they had been in use on the New England roads. Stowell and Crandall, the persons named by the last witness, testified, the former, that on the morning of the day of the accident, before the car in question left Springfield for Greenbush, he examined it carefully, particularly its axles and wheels, to see if it was safe and in good condition, and that he discovered no defect or indication of weakness or unsoundness; and the latter, that he made a similar examination of the car at Greenbush, just before it left there on the day of the accident, with the like result. A number of other witnesses were examined on the part of the defendant, who had skill and knowledge as to iron and its manufactures, and in making and operating railroad cars, who

testified in substance that the car in question was built by the Springfield Car and Engine Company; that the axle which broke was of the usual size and description of axles then in use; and that it was made of good Salisbury iron, which was and is considered the best kind of iron for such purposes. They also testified, that after the accident the broken axle was examined by them with a view of ascertaining the quality of the iron, and subjected to the usual tests for determining the strength of iron, and that it proved to be of superior quality and strength; they further testified that upon examining the axle after it was broken, a slight crack was discovered in the iron at the broken point, about a quarter of an inch deep and one and one-half inches long; that this kind of crack is peculiar to hammered iron and is called a fire crack, and that there was no way of discovering its existence except by bending the axle after it was manufactured; that this defect in the axle could not be discovered before it was broken, by careful inspection or by striking it with a hammer, or in any way except by bending it; that no external defect existed in the axle which was discoverable.

The plaintiff, in reply, called several witnesses, who, after objection and exception by the defendant, testified that the safety beam was invented many years prior to 1850; that during several years previous to 1850, it was in use on some of the railroads in the State of New-York, in New Jersey and other sections of the country; but that it was not in use on the New England roads prior to 1851, and that it was not generally adopted and put in use on railroads until 1851. The plaintiff also gave evidence in reply, tending to show that some persons, engaged in manufacturing car axles and cars, were accustomed to bend the iron of which the axles were made and the axles after they were manufactured and before they were used in constructing the car, to discover fire cracks; there was no evidence that the iron, of which the axle in question was made, or the axle itself, was subjected to this test.

At the close of the evidence, the counsel for the defendant requested the court to charge the jury, that if the defendant exercised all the care and diligence which it could reasonably exercise in providing a safe track and a safe engine and cars, and properly supplied its train with a suitable number of competent and faithful men to take charge of the train, and those men managed the train in a careful and skillful manner, the defendant is not liable. The court did so charge.

The counsel for the defendant also asked the court to charge that the defendant was only bound to have its cars constructed in the manner then commonly in use, and then deemed sufficient and safe. The fact that it had not adopted the safety beam, or any other invention, new or old, which was not then in use or deemed necessary by careful persons, in the same pursuits in the defendant's locality, is not evidence of negligence. The court declined so to charge, but, in response to this request, did charge, in substance, that the omission to adopt the safety beam was not, *per se*, necessarily evidence of negligence, but that the question of negligence was for the jury, and did not depend upon what others deemed necessary, but what the jury should believe the defendant had reason to suppose, and ought, under the circumstances, proved, to have known was necessary to the safety of passengers; that the usual mode of constructing cars in the defendant's locality, was proper to be considered by the jury, with the other circumstances, but was not necessarily controlling. To this refusal of the court to charge, as requested, and to the charge as given, the counsel for the defendant excepted.

The counsel for the defendants also asked the court to charge, that, in respect to the breaking which is complained of, the defendant cannot be held guilty of negligence, if it purchased the axle from manufacturers having a high character for the excellence and safety of the axles manufactured and sold by them, and the defendant used such care and skill in searching for defects, as is characteristic

of cautious persons engaged in the same pursuit, even though defects did exist, such as caused the breaking by which the plaintiff was injured, provided such defects could not be discovered on such examination. The court declined to so charge, but instructed the jury that the defendant was responsible for any defects which were known to the manufacturer, or which might have been discovered by him upon a vigilant and careful examination of the axle, or which, after delivery, might have been discovered upon a like examination by a competent person; that the reputation of the manufacturer should be taken into consideration with the other circumstances, but would not alone absolve the defendant from responsibility. To this refusal to charge, as requested, and to the charge as given, the defendant's counsel excepted.

The counsel for the defendant requested the court to instruct the jury that the defendant, under the circumstances of this case, was not liable for any defect which existed in the axle, if such defect was not discoverable after the purchase of the car and axle, upon such examinations as are characteristic of cautious persons engaged in the same pursuit as the defendant. The court declined to do so, but charged the jury, that, as to the materials of which the axle was made, if they were not of a proper quality, or wrought in a proper manner, and the defects were of that character that they could have been discerned upon a vigilant examination, by a person of competent skill, either at the time of the construction or afterwards, then the defendant was responsible for the consequences; and the counsel for the defendant excepted.

The defendant's counsel also asked the court to charge the jury, that, in making the careful examinations required by law, before the train started, the defendant was not guilty of negligence, if it made all the examinations which human skill and foresight could make, without taking the machinery to pieces; and the court did so charge.

The court, also, among other things, charged the jury that the defendant, under the circumstances of this case, was responsible for all defects in the axle, by the breaking of which the injury to the plaintiff occurred, and which might have been discerned and remedied, to the same extent as if it had manufactured said axle in its own workshop, and by its immediate agents.

The court also charged the jury, that, although the defendant purchased its axles and cars of extensive and skillful manufacturers, who, in the exercise of their skill in the manufacture, knew of no test, and used no test, to discover latent defects in axles, yet, if there was any test known to others, and which should have been known and employed by the manufacturers, as men professing skill in their particular business, although the same may not have been used by some others engaged in the same business of manufacturing cars and axles, defendant was guilty of negligence in not using this test, provided the injury occurred to the plaintiff by reason of a defect, which, by such test, might have been discerned.

The court also charged the jury, that, if they should be of the opinion that a safety beam was designed and calculated to prevent an injury to passengers in case of the breaking of an axle, it did not necessarily follow that the defendant was liable, because it had not adopted it, but it would be for the jury to say whether the defendant was or was not negligent in informing itself of the necessity and utility of the invention, and availing itself of it, taking into consideration the vigilance required of carriers of passengers for hire, and of the publicity of the invention, and of its use prior to, and at the time of the injury; that it was no apology that the safety beam was not in use by the New England railroads, or by any other particular roads. The counsel for the defendant duly excepted to each portion of the foregoing charge, which

was not in accordance with the requests made to the court, above stated.

The jury rendered a verdict in favor of the plaintiff, and assessed his damages at $9,900. Judgment was rendered upon the verdict, which was affirmed by the supreme court sitting in the 3d district. ( *See* 16 *Barbour*, 353.) The defendant appealed to this court.

*John H. Reynolds*, for the appellant, insisted upon the following, among other points.

I. Carriers of passengers are not insurers. The extreme limits of the rule, as applied to them, has never required anything beyond the exercise of the " utmost" skill or care in the preparation and management of their means of conveyance, or the care and skill " characteristic of cautious persons engaged in the same pursuit." (*Angel on Carriers*. §§ 534 *to* 539 ; *Camden and Amboy R. R.* v. *Burke*, 13 *Wendell*, 611 ; *Ingalis* v. *Bills*, 9 *Metcalf*, 1 ; *Aston* v. *Haven*, 2 *Espinasse*, 533 ; *Christie* v. *Griggs*, 2 *Campbell*, 79.) 1. Carriers of passengers by railroad are not required in the prosecution of their business to become smelters of iron, manufactures of iron rail, of locomotives, car wheels, axles, or cars. In respect to these necessary things in the management of a railway, a railroad corporation may purchase of the manufacturer ; and the most that can be required of them is the exercise of all reasonable care and skill, in detecting any defect that may happen to exist in the construction. (13 *Wendell*, 611 ; 9 *Metcalf*, 1 ; *Story on Bailments*, § 592.) 2. To hold them responsible for latent defects in the construction of the vehicle not capable of being discovered by the exercise of the ordinary means at command, is to make them insurers in this particular, and is at war with the established rule of their liability. 3. It is practically impossible that a railroad company should smelt and manufacture its own iron, or build its own cars

and locomotives.    They may and must depend upon others
for very much of the machinery and materials requisite to
equip and operate their road.    If, in the selection and pur-
chase of these, the carrier by railroad exercises the
" utmost" care and skill, the law will protect him against
the consequences of those imperfections which elude human
sagacity; for the passenger who travels by railroad, assumes
all the risk, incident to that means of conveyance, against
which the utmost skill, as applied to the management of a
railroad, cannot guard.    (*Angel on Carriers*, § 523; *McKin-
ney* v. *Neil*, 1 *McLean* (*Circuit*) *R.*, 540.)    4. If a greater
degree of care is exacted from the carrier, in the operation
of a railroad as a means of conveyance, than is required in
the management of a stage coach when employed for a simi-
lar purpose, it is because the one species of conveyance is
necessarily attended with greater hazard than the other.
For the same reason which exacts greater skill in the car-
rier by railroad, a greater risk is assumed by the passenger;
and the duty on the one side and the risk on the other is
to be graduated by, and adapted to the nature of the con-
veyance employed.    The most that is required of the carrier.
in either case, is the exercise of the requisite skill and care
in the procurement and management of his vehicles.
Beyond this the passenger takes the risk; and if he suffers
injury he has no redress.    (*Angel on Carriers*. § 523; *Story
on Bailments*, § 590.)

II. The ground upon which the liability of the passenger
carrier rests, is his negligence in the preparation, procure-
ment or management of his vehicle, and he cannot be made
liable at all, except when he has done something that he
ought not to do, or omitted to do that which he ought to
have done, and which, in the employment of the utmost skill
and care, he could have done for the greater safety of his
passengers.    (*Ingalls* v. *Bills*, 9 *Metcalf*, 1; *Camden and Amboy
R. R. Co.* v. *Burke*, 13 *Wend.*, 611, 627, 628.)    1. In this
respect, the liability of the carrier of passengers differs from

Hegeman *against* The Western Railroad Corporation.

'the carrier of goods, who is responsible at all events, for all accidents happening to the property intrusted to his charge, except when occasioned by the act of God, 'or the public enemies. He is a warrantor of the land-worthiness of his vehicle, or the sea-worthiness of his vessel. The passenger carrier insures nothing beyond the employment of the utmost skill in the preparation and management of his means of conveyance. 2. There is no reason for imposing upon a carrier, by railroad, a different rule of liability than that indicated by the common law in relation to passenger carriers by other and less hazardous means of conveyance. The ground upon which their liability rests is the same as that of any other carrier of passengers.

III. The charge of the circuit judge to the jury was, that as to the materials of which the axle was made, or the manner in which they were wrought, the defendants were responsible to the same extent as if they had manufactured the axle in their own workshop by their immediate agents. This proposition was manifestly erroneous : 1. The charge, in this particular, did not put the liability of the defendant upon the ground of negligence, or want of skill or care, which is the only true ground of liability ; 2. But it expressly makes them liable for the acts of the manufacturer over which they have no control, and warrantors against latent defects in the axle, which no exercise of vigilance on their part could detect; 3. The proposition was a substantial direction to find a verdict for the plaintiff; the jury were directed that, under the circumstances of this case, the defendant was responsible for all defects in the axle, to the same extent as if its immediate agent had manufactured the defective axle under the eye of the defendant.

IV. The court erred in its refusal to charge that, under the circumstances, the defendant was not liable for defects existing in the axle if such defects were not discoverable upon such examination as was characteristic of cautious persons, engaged in the same pursuit. (13 *Wendell*, 611;

9 *Metcalf*, 1.)    1. This request was, founded upon the well settled doctrine that the carrier is responsible only for want of care.    It proposed to have the jury consider whether, in purchasing and making examination of the axle, they had employed all the skill to discover defects which the law required of them, and upon that question their liability rested; 2. The charge actually made in response to that request was manifestly erroneous; they were held liable for the quality of the materials, and the manner of their being wrought by the original worker of the iron, and their liability is not in any respect made to depend upon the care and skill exercised by the defendant.

V. The court erred in charging the jury that the defendant was responsible for latent defects in the axle, which might have been discovered by applying a test known to others, but not known to the manufacturers of the particular axle, although he was an extensive and skillful manufacturer, and who, in the exercise of his skill, knew of no test to discover latent defects : 1. The plain import of this direction was, to make the defendant an insurer of the utmost skill and highest state of knowledge in all persons connected with the manufacture of a car, which might happen to be employed on the defendant's road ; 2. In this case it required the defendant to possess a greater knowledge in the manufacture of iron, and cars and car axles, than persons of extensive knowledge and skill engaged in that particular business, and holds them responsible for the omission of the manufacturer to employ a test that he knew nothing about.

VI. With respect to the defendant's liability for the latent defect in the axle, the whole charge of the court was singularly inaccurate in its whole scope and meaning, and could not have failed to withdraw from the jury, the true question upon which their liability rested.   Instead of directing the attention of the jury to the point, how far the defendant had omitted any precaution to discover the defect, they were instructed, upon undisputed evidence, that a defect

Hegeman *against* The Western Railroad Corporation.

existed which was not capable of being discovered upon any ordinary examination, to inquire if this defect might have been discovered by the manufacturer; and if so, the defendant was liable, no matter how much vigilance he may have employed in his own examination.

Such instructions can only be sustained upon the assumption that every person, directly or remotely employed at any time in the preparation of the materials out of which a car is ultimately constructed, or in its construction, is the agent of the defendant. This is erroneous. (*Blake* v. *Ferris*, 1 *Selden*, 48, *and cases cited.*)

VII. The evidence permitted to be given in the case with respect to the safety beam, to show that its non-adoption by the defendant was negligence, was improperly admitted, and tended to mislead the jury: 1. At the time of the injury to the plaintiff, the safety beam was not in general use. Its utility, as a means of preventing accidents, had not at that time been fully proved. It was not adopted on the central line of railroad until February, 1851, after the accident; 2. The mere omission of a railroad company to adopt an untried invention, whether ancient or modern, was not legitimate evidence of negligence for the consideration of the jury.

VIII. The court erred in refusing to charge that the defendant was only bound to have his cars constructed in the manner then commonly in use, and that the fact that the defendant had not adopted the safety beam, was not evidence of negligence.

*David L. Seymour*, for the respondent, insisted upon the following, among other points.

I. The general rule on this subject is, that passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight will go; that is, for the utmost care and diligence of very

cautious persons; and of course they are responsible for any, even the slightest neglect. (*Story on Bailments*, § 601; *Aston* v. *Heanere*, 2 *Esp. R.*, 533 ; *Christie* v. *Griggs*, 2 *Camp. R.*, 79 ; *White* v. *Boulton*, *Peake's R.*, 81. *Stokes* v. *Saltonstall*, 13 *Peters R.*, 181.) " The law, in tenderness to human life and human limbs, will hold the proprietors liable for the slightest negligence, and will compel them to repel, by satisfactory proofs, every imputation thereof." (*Story on Bailments*, § 601, *a.*) The land-worthiness, or road-worthiness, of the vehicle, is always warranted by the carrier of passengers. (*Angel on Carriers*, §§ 534, 538 ; *Israel* v. *Clark*, 4 *Esp. R.*, 259 ; *Ingalls* v. *Bills*, 9 *Met. R.*, 1 ; *Carpue* v. *London and Brighton Railway*, 5 *Adol. & Ellis*, 747 ; *Palmer* v. *Grand Junction Railway*, 4 *M. and Welsb. R.*, 749 ; *Bridge* v. *Grand Junction Railway*, 3 *M. and Welsb. R.*, 244.) The carrier of passengers is also liable for a defect in the mode and construction or mal-construction of his vehicle. (*Angel on Carriers*, § 537 ; *Curtis* v. *Drinkwater*, 2 *Barn. & Ald.*, 169.)

II. The legal proposition, that the defendant is not liable for the negligence of the manufacturer, who made the axle on contract with him, or the manufacturer who put it into his car on a like contract, provided he has a high character for the excellence and safety of the axles manufactured and sold by him, is not sound law. The reputation and character of the manufacturer of this car have nothing to do with the liability of the defendant. The question was one of fact for the jury to determine, whether or not due care was exercised in regard to the material and the construction of this axle, by the manufacturer or person who selected it and placed it in the car. He was the defendant's agent; and if he was guilty of negligence, the defendant was also guilty of negligence in respect to it. (*Angel on Carriers*, § 435; *Sharp* v. *Grey*, 9 *Bingham R.*, 459; *Paley on Agency*, by *Dunlap*, 294, 295, 296, *and notes.*)

III. If the manufacturer, employed by the carrier to build the carriage, and of whom he buys it, could have discovered the defect, and guarded against the breaking, and he did not do it, then the carrier is also liable, for putting in use, for the carriage of passengers, a carriage not road-worthy through the unskilfulness or negligence of the manufacturers; a carriage whose defects might have been avoided by human care and foresight. Such is the doctrine both of the English and American courts. (*Israel* v. *Clark*, 4 *Esp.* 259, *a broken axle; Bremner* v. *Williams*, 1 *Car. & Payne*, 414; *Crofts* v. *Waterhouse*, 3 *Bing.*, 321; *Thorpe* v. *Grey*, 9 *Bing.*, 460, *a broken axle; Grote* v. *Chester and Holyhead Railway*, 2 *Welsby, Hurlst. & Gord.*, 251; *Lgon* v. *Mells*, 5 *East*, 435, 436; *Shaw* v. *The York, &c., R. R. Co.*, 6 *Eng. Railway Cases*, 67; *Farewell* v. *Boston and Wor. R. R. Co.*, 4 *Metcalf*, 58; *Caldwell* v. *Murphy*, 1 *Duer*, 241, 246; *Brand* v. *Troy and Sch. R. R. Co.*, 8 *Barb.*, 377; *Stokes* v. *Saltonstall*, 13 *Peters*, 191; *New Jersey R. R. Co.* v. *Kennard*, 21 *Pa. St.* 203; *Laing* v. *Calder*, 8 *Barr*, 479–482; *Story on Bailments*, §§ 192, 601, *a; Angell on Carriers*, §§ 536, 538.) This rule of responsibility does not contravene the rule laid down by this court, in *Stevens* v. *Armstrong* (2 *Selden*, 435), that to render a person liable for the negligence of another, the relation of master and servant, or of principal and agent must exist between them. It is not sought to make the defendant liable for the neglect of the manufacturer, but for his own neglect in not doing or causing to be done what it was proved that human care and foresight could have done, to discover and remedy the defect in the construction of the car in question. The reasonableness of the rule appears from the consideration that the law can give no remedy to the injured passengers against the manufacturer of the car. There is no privity between them. (*Thomas* v. *Winchester*, 2 *Selden*, 407, 408, *and cases there cited; Winterbottom* v. *Wright*, 10 *Meeson and Welsby*, 109; *Angell on Carriers*, § 579.)

IV. The fact that the defendant had not adopted the safety beam, with the other evidence on this subject, was competent as tending to establish negligence. It was proper evidence for the jury on the question, whether the defendant was guilty of negligence in constructing the car. The charge of the judge on this point was correct.

GARDINER, C. J. It has been said that every wayfarer must take the risks incident to the mode of travel he adopts; but these risks are only those which cannot be avoided by the carrier of passengers by the utmost degree of care and skill in the preparation and management of the means of conveyance. (*Angel on Com. Carr.*, § 523.) The carrier, in the language of other judges, is bound to use all precautions, as far as human care and foresight will go, for the safety of his passengers. (2 *Kent*, 602, 7*th ed., and cases cited.*) In the application of these principles, it is obvious that the same precautions will not exonerate the carrier of passengers from responsibility in every mode of travel. The foresight and preparation that would suffice to satisfy the rule in one species of navigation or conveyance, would not answer in another; and the external examination, which, in connection with the reputation of the builder of a stage coach, would and ought to satisfy the scruples of the most cautious person, as to the safety and security of a vehicle designed to run from six to eight miles the hour, would not satisfy any reasonable man as to the sufficiency of another intended to sustain a far greater weight, and to be propelled by steam thirty, forty or fifty miles in the same time. The charge of the learned judge, at the trial, assumes and proceeds upon this distinction throughout; and in that part of it where he gives the measure of the responsibility of the defendant, in the strongest terms against him, and in favor of the plaintiff, he says, "that although the defendant purchased his axles and cars of extensive and skillful manufacturers, who, in the exercise of their skill, knew of no test, and used no test to

Hegeman *against* The Western Railroad Corporation.

discover latent defects in axles, yet, if there were any tests known to others, and which should have been known and employed by the manufacturers, as men professing skill in their particular business, although the same may not have been used by some others engaged in the same business, defendant was guilty of negligence in not using this test, provided the injury occurred to the plaintiff by reason of a defect, which, by such test, might have been discovered. The substance of the charge was, that although the defect was latent, and could not be discovered by the most vigilant external examination, yet, if it could be ascertained by a known test, applied either by the manufacturer or the defendant, the latter was responsible.

In these instructions, there was no error. *Ingalls* v. *Bills* (9 *Metcalf*, 1), cited by the defendant's counsel, was the case of a stage coach, in which the injury was occasioned by the breaking of the axle; the fracture was internal, and surrounded by sound iron, one-quarter of an inch thick; the court held, that where the accident arises from a hidden and internal defect, and which could not be guarded against by the exercise of a sound judgment, and the most vigilant oversight, then the proprietor was not liable for the injury. I concur in that decision, in the particular case presented; but the learned judge did not intimate "that a sound judgment and the most vigilant oversight" would be evidenced, by the adoption of the same methods of examination in the case of a stage coach and a car for the express train of a railroad. The mode of construction, the purposes to be subserved, and above all, the probable consequences of a hidden defect in the two cases, are altogether different. It might as plausibly be urged, that a chain for agricultural purposes and the cable of a ship of the line should be subjected to the same tests, because both were chains and each manufactured of the same material. Keeping the distinction indicated in view, the charge was sufficiently favorable to the defendant.

3 KERN.—2

Two questions were presented for the consideration of the jury. First, was there a test known to and used by others, and which should have been known to a skillful manufacturer, by which the concealed defect in the axle of the car could have been detected; and if so, then, secondly, was the injury to the plaintiff the consequence of that imperfection? There was evidence tending to establish these facts, which the jury have found.; and the question returns, can the defendant, who neither applied the test, or caused it to be applied by the manufacturer, insist that this accident could " not have been avoided by the utmost degree of care and skill, in the preparation of the means of conveyance," or " that they used all precautions, as far as human care and foresight would go, for the safety of the plaintiff, as one of their passengers?" It seems to me that there can be but one answer to the question.

It was said that carriers of passengers are not insurers. This is true. That they were not required to become smelters of iron, or manufacturers of cars, in the prosecution of their business. This also must be conceded. What the law does require is, that they shall furnish a sufficient car to secure the safety of their passengers, by the exercise of the " utmost care and skill in its preparation." They may construct it themselves, or avail themselves of the services of others; but in either case, they engage that all that well directed skill can do has been done for the accomplishment of this object. A good reputation upon the part of the builder is very well in itself, but ought not to be accepted by the public, or the law, as a substitute for a good vehicle. What is demanded, and what is undertaken by the corporation, is not merely that the manufacturer had the requisite capacity, but that it was skillfully exercised in the particular instance. If to this extent they are not responsible, there is no security for individuals or the public.

It is perfectly understood that latent defects may exist undiscoverable by the most vigilant examination, when the

Hegeman *against* The Western Railroad Corporation.

fabric is completed, from which the most serious accidents have and may occur. It is also well known, as the evidence in this suit tended to prove, and the jury have found, that a simple test (that of bending the iron after the axle was formed and before it was connected with the wheel), existed, by which it could be detected. This should have been known and applied by men " professing skill in that particular business." It was not known, or if known, was not applied by these manufacturers. It was not used by the defendant, nor did they inquire whether it had been used by the builders. They relied upon an external examination, which they were bound to know would not, however faithfully prosecuted, guard their passengers against the danger arising from concealed defects in the iron of the axles, or in the manufacture of them. For this omission of duty, or want of skill, the learned judge held, and I think correctly, that they were liable.

This is the only important question in the cause. The requests of the defendant's counsel to the judge for instructions to the jury, were intended to present this principle point in its strongest aspect for the defendant; and all the exceptions are determined, if the above suggestions are well founded.

The evidence of the utility and use of the safety beam was properly admitted. It had been used in New Jersey eleven years before this accident, and upon some of the Albany and Buffalo roads, from the latter part of the year 1846 ; and in 1851 was introduced upon the road of the defendant. Whether the adoption of this improvement, under all the circumstances, was a necessary or proper pre-caution on the part of the defendant, was correctly submitted to the jury.

The judgment of the supreme court should be affirmed.

JOHNSON, HAND, CRIPPEN and DEAN, JJ., concurred in the foregoing opinion.

MARVIN, J. (Dissenting.) In his charge, the learned justice first told the jury, that if the defendant exercised all the care and diligence which he could reasonably exercise in providing a safe track and a safe engine and cars, and properly supplied their train with a suitable number of competent and faithful men to take charge of it, and those men managed the train in a careful and skillful manner, the defendant was not liable. This instruction was given in the form desired by the defendant. In a subsequent part of the charge, the judge instructed the jury, that the defendant was responsible for any defects which were known to the manufacturer, or which might have been discovered by him upon a vigilant and careful examination of the axle, or which, after delivery, might have been discovered upon a like examination by a competent person; that the reputation of the manufacturer should be taken into consideration with the other circumstances, but would not alone absolve the defendant from responsibility. The defendant excepted to this part of the charge.

The car, the axle of which was broken, was manufactured by the Springfield Car and Engine Company, for the defendant; this company manufactured cars for many railroad companies. It procured the axle that broke in the present case, from Ames' factory, an extensive manufactory of iron. I do not understand that the Springfield Car and Engine Company, or Ames or his factory, were in any sense the servants or agents of the defendant; the latter worked in iron and made axles and sold them to the manufacturers of cars or to railroad companies; and the former manufactured to order, cars, &c., for railroads. As I understand the charge, the defendant was to be held responsible for any defects in the axle which were known to the manufacturer, or which might have been discovered by him upon a vigilant and careful examination; it is added, "or which after delivery, might have been discovered upon a like examination by a competent person." The judge further charged

that as to the materials of which the axle was made, if they were not of a proper quality, or wrought in a proper manner, and the defects were of that character that they could have been discovered upon a vigilant examination by a person of competent skill, either at the time of the construction or afterwards, then the defendant was responsible for the consequences. He also charged, that the defendant was responsible for all defects in the axle which might have been discovered and remedied, to the same extent as if the defendant had manufactured said axle in its own work shop and by its immediate agents. The charge takes the position that the defendant was responsible for any defect in the axle, whether of materials, workmanship or otherwise, which were known, or might have been discovered by the manufacturer upon a vigilant and careful examination at the time of construction or afterwards. In other words, the defendant was made surety for the skill and extraordinary care and vigilance of the manufacturers; and if, in fact, a defect existed or happened at the time of construction, which could have been detected by the manufacturer, though such defect was secret at the time the defendant purchased and used the axle and not discoverable, still the defendant would be liable for the want of care on the part of the manufacturer. In my opinion this position cannot be sustained unless we are prepared to hold that railroad companies shall be held liable for all defects, whether discoverable or not; thus making them warrantors of the road-worthiness of their cars, &c. The manufacturers of the axle and the car were not the servants or agents of the defendant; they pursued an independent business, and for any want of care or skill, or for negligence they were liable. It would, in my opinion, be very dangerous to establish the rule, that he who purchases and uses an article manufactured by a mechanic, shall be responsible for any injury to third persons in consequence of a defect in the article, not discoverable by the purchaser and user. Such a principle would be far

Hegeman *against* The Western Railroad Corporation.

reaching, and it is not possible now to consider and fix a limit to the cases to which it would apply. It goes entirely beyond the rule making every one responsible for his own negligence and the negligence of his servants and agents.

In *Stevens* v. *Armstrong* (2 *Seld.*, 435), it was held by this court, that to render one person liable for the negligence of another, the relation of master and servant, or principal and agent must exist between them. In the present case, it is argued, that the charge of the judge is not in conflict with the case just cited; that it does not make the defendant liable for the neglect of the manufacturer, but for its own neglect in not doing or causing to be done what human care and foresight could have done to discover and remedy the defect in the construction of the car in question. Does not this proposition involve the responsibility of the defendant for any want of care or for any neglect in the manufacturer, though such want of care or neglect could not be detected after the car was completed and when it was put in use? As I understand the judge, he made the defendant liable for any defect happening during the construction of the car and axle, which could have been detected by the manufacturer, though it could not be detected by the defendant after the car and axle were completed. I agree that the defendant should be held to the exercise of the utmost care and diligence. I think, in *Ingalls* v. *Bills and others* (9 *Met.*, 1), the proper distinction was made, and the true principles were established. In that case, decided in 1845, all the English cases were reviewed and the American cases referred to, and I shall content myself with this reference to that case, adopting the reasoning of the court there, and applying it to the present case. I think the learned judge erred in the rule of responsibility, and that there should be a new trial.

DENIO J. (Dissenting.) I understand the effect of the charge to be, that the defendant is responsible in the

same manner which he would be if, besides managing the railroad, he was also the manufacturer of his cars and of all the parts of which they are composed, including the axles. The workmen of the iron manufacturers are to be regarded, according to the charge, as the servants of the railroad company, and it is responsible for the negligence of such workmen as for that of its immediate agents and servants. This, I think, cannot be sustained. If the defendant had chosen to commit to others the doing of things which its charter contemplated should be performed by the company, it might be estopped from alleging that such other persons were not its servants; but the manufacture of the passenger cars is a separate and distinct business, and the workmen employed in constructing them and the iron work composing their several parts, are not, in my opinion, in any proper sense the servants of the railroad corporation. The cases upon the point, have been mentioned by Judge Marvin, and it is only necessary to add to them those which are referred to in *Smith's Treatise on the Law of Master and Servant, at page* 164 *and seq.*

I am in favor of reversing the judgment of the supreme court.

Judgment affirmed.