MARY BIRMINGHAM, BY JOHN C. BIRMINGHAM, HER GUARDIAN AD LITEM, PLAINTIFF, v. THE ROCHESTER CITY AND BRIGHTON RAILROAD COMPANY, DEFENDANT.

*Negligence — a railroad corporation using a State bridge is liable to a passenger injured because of defects therein — the safe construction of such bridge is a question for the jury.*

A horse railroad company obtained and exercised the privilege of laying its tracks over a bridge crossing the Erie canal, which was owned and constructed by the State. This bridge, which was a "lift-bridge" operated by hydraulic machinery, had been imperfectly balanced when originally constructed. The defect was remedied by the State by the construction of counter-weights in the form of iron troughs loaded with pig-iron, and suspended at the top of the bridge over the carriage-way and railroad track. While a passenger of the railroad company was passing over the bridge a stirrup supporting the trough broke and she was injured by the falling iron.

*Held,* that as the railroad had adopted the bridge as one of the appliances for carrying on its business, it was liable for defects therein, whether original or resulting from wear and tear, whether latent or patent, to the same extent as if the railroad corporation had constructed the bridge, or had owned and controlled it.

That the question of negligence involved in the method of suspending the counter-weights was one for the jury.

EXCEPTIONS directed to be heard in the first instance at General Term, after a trial at the Monroe County Circuit on March 14, 1890, at which a nonsuit was directed by the court.

*E. Van Voorhis,* for the plaintiff.

*A. Benedict,* for the defendant.

DWIGHT, P. J.:

The plaintiff, a young girl of fourteen years of age, was a passenger by one of the cars of the defendant on its street railway in the city of Rochester. The route pursued by the car was along West Main street, crossing the Erie canal by a "lift-bridge" constructed and owned by the State, and which formed a part of the highway. The bridge was raised and lowered by hydraulic machinery, but it seems that, as originally constructed, it was imperfectly balanced, and that counter-weights had been added in the form of iron troughs loaded with pig-iron and suspended at the top of the bridge, some eighteen feet from the floor, and directly above the carriage-way and railroad track. The mode of suspension is not very clearly described in the record, but it is sufficient to say that it depended for its security upon the strength of the welding of certain iron "stirrups" through which the troughs passed. On the occasion of the passage of the car in which the plaintiff was seated the stirrup supporting the end of one of these troughs gave way and the end of the trough fell from its horizontal position. Its entire load of loose pigs of iron slid out and were precipitated upon and through the roof of the car, and one or more of them struck the plaintiff on the head and shoulder, inflicting the serious injuries of which she complains.

The only question in the case is whether the defendant is chargeable with these results of the imperfect and unsafe construction of the bridge. The defendant's contention to the contrary is based upon the fact that the bridge was not one of its own structures, being neither built nor controlled by it; that it had no authority to reconstruct or repair it; and that even if it had such authority the defect from which the accident resulted was one which would not have been disclosed upon reasonable inspection.

We think this contention cannot be maintained, but that it is opposed to elementary principles which determine the liability of common carriers of passengers. The fact that the structure was not built or controlled by the defendant is immaterial. It was adopted and employed by the defendant as one of the appliances by means of which its business of transporting passengers was carried on. Such being the case, the defendant was chargeable with all the defects of the structure, whether original or resulting from wear

and tear, whether latent or patent, to the same extent as if it had been constructed by the defendant itself, or owned and controlled by it. This conclusion results from the nature of the contract between the carrier and the passenger. That contract is to carry safely, barring accidents against which the utmost human skill and foresight are powerless to provide. This contract includes not merely an assurance that the utmost skill and foresight shall be employed to secure the safety of the passenger during the act of transportation, but a guaranty that the same degree of skill and foresight has been employed in the selection and construction of all the machinery and appliances used for the purpose of such transportation. In other words, the carrier of passengers contracts not only for his own skill and care in the conduct of the business, but for the skill and care of all those who have made or furnished any of the instrumentalities or appliances by means of which the business is conducted. (*Palmer* v. *D. and H. Canal Co.*, 120 N. Y., 170, and the cases cited; *Carroll* v. *Staten Island Co.*, 58 id., 126, 138; *Hegeman* v. *Western R. R. Co.*, 13 id., 9.)

These principles would apply to the case at bar even if it were to be conceded that the imperfect welding of the iron stirrup were the only defect in the construction of the bridge of which the plaintiff could complain, because, even though that defect was not discoverable after the bridge was erected and in operation, it is in evidence, and not questioned by the defendant, that the defect in welding was easily discoverable by the maker of the stirrup on the application of a well-known test. But the concession, supposed, cannot be required of the plaintiff. The whole question of negligence in the application of counterweights to the bridge — whether the exercise of even ordinary prudence was evinced in the suspension of loose masses of iron, in troughs, over the heads of passengers, liable to be precipitated upon them whenever a defect should develop itself in the means of suspension, was clearly a question for the jury. This mode of construction was open and apparent to ordinary observation, and against the dangers incident to it, whatever they were, the defendant was bound by its contract to protect its passengers.

By its use of the bridge the defendant made it a part of the superstructure of its road, and was as much responsible for its safe

condition as for that of any portion of its track. So it has always been held in respect to railroads employing leased lines, or the right of trackage on the lines of other roads. It is to the company contracting for his transportation, and not the company upon whose line the cars of the former are run, to which the passenger may look for compensation for an injury resulting from a defective road. (*Phil. and Read. R. R. Co.* v. *Anderson*, 94 Penn., 351 ; *Murch* v. *Concord R. R. Co.*, 29 N. H., 9 ; *John* v. *Bacon*, L. R., 5 C. P., 437.)

In this case the defendant — under what arrangement does not appear — acquired or assumed the privilege of laying its track over a bridge belonging to the State. It was no less responsible to its passengers for the safe condition of the structure than if it had been of its own construction. We think the question of the negligence, if any, for which the defendant was responsible, was a question for the jury, and that the motion for a nonsuit was improperly granted.

The plaintiff's exception to that ruling should be allowed and a new trial granted.

Macomber and Corlett, JJ., concurred.

Motion for a new trial granted, with costs to abide the event.