ANNIE E. CONWAY, Respondent, v. THE BROOKLYN HEIGHTS RAIL-
ROAD COMPANY, Appellant, and FRANK FERRIS, Respondent.

*Negligence — degree of care required of a street car company where a slowly moving
car on one track approaches a heavily loaded wagon on another track the load on
the rear of which strikes the car — effect of a signal given by the driver of the
wagon to the motorman.*

In an action to recover damages for personal injuries sustained by the plaintiff,
it appeared that the defendant operated a double-track street railroad on Grand
street in the borough of Brooklyn; that, as one of its cars was proceeding
slowly up a grade on one of these tracks, a heavily laden wagon was proceeding
slowly down the grade on the other track; that when the car and the wagon were
passing each other the driver of the wagon attempted to pull off the tracks,
and in so doing the rear of the wagon swung around and the rear bags of
cotton, with which it was loaded, struck the wooden stanchions at the middle
of the car, shattering them so that the plaintiff, a passenger in the car, was
injured by the fragments.

The driver of the wagon testified that he supposed the car would stop at a switch
a short distance below the scene of the collision, and that as it did not he sig-
naled to the motorman by shouting or by motioning with his hands to stop
the car, but that the motorman disregarded such signal.

He further testified that he tried to pull off the track, but was unable to do so
because of the weight of the loaded wagon, the down grade, and the fact that
the right wheel of the wagon was inside the track.

*Held*, that it was error for the court to charge that the defendant was bound to
exercise "the highest degree of care and skill which human foresight could
provide;"

That, if the court had charged that the defendant was bound to exercise a high
or a very high degree of care and skill in the operation of its cars, the charge
would have been unexceptionable;

That, in view of the relative rights and duties of the car and the wagon, the sig-
nals alleged to have been given to the motorman by the driver of the wagon
were not sufficient to bring to the attention of the motorman notice that, if he
continued to drive the car slowly along the track, a situation from which grave
injury might be expected would result.

APPEAL by the defendant, The Brooklyn Heights Railroad Com-
pany, from a judgment of the Supreme Court against it, entered in
the office of the clerk of the county of Queens on the 25th day of April,
1902, upon the verdict of a jury in favor of the plaintiff for $3,000,
and dismissing the complaint as to the defendant Frank Ferris, and
also from an order entered in said clerk's office on the 7th day of

May, 1902, denying said defendant's motion for a new trial made upon the minutes.

*I. R. Oeland* and *George D. Yeomans,* for the appellant.

*A. H. Dailey,* for the respondent Conway.

*Martin Wechsler* and *John Palmieri,* for the respondent Ferris.

JENKS, J. :

The actionable negligence of the railroad corporation turns upon the proposition whether it failed in its legal obligation when it did not arrest its car. If the motorman was apprised, or, in the exercise of proper care, should have been apprised, that his obligation to his passengers required him to stop the car in order to prevent the collision, and could, in the exercise of such care, have done so, and thereby avoided the collision, then liability for the injury consequent upon his omission may be cast upon the defendant. I think that the learned court erred when it charged the jury that the defendant was bound to " *the highest degree of care and skill which human foresight could provide.*"  There is such an obligation upon the common carrier of passengers as stated in the clause quoted. (*Coddington* v. *Brooklyn Crosstown R. R. Co.,* 102 N. Y. 66; appd. in *Stierle* v. *Union Railway Co.,* 156 N. Y. 684; *Koehne* v. *N. Y. & Queens County R. Co.,* 32 App. Div. 419; affd., 165 N. Y. 603.)  But the present application of the rule depends upon the circumstances of this case.  In *Coddington's Case (supra)* the street railroad track was crossed by the track of a steam railroad, and a passenger on the defendant's car was struck by a locomotive passing on the steam railroad track.  The court said that, under such circumstances, the obligation of the defendant was to use the highest degree of care and prudence, the utmost human skill and foresight.  Several decisions, cited by the court, are instructive. In *Ingalls* v. *Bills* (9 Metc. 1) the hind axle of the coach broke, without apparent cause, one of the hind wheels of the coach came off, the coach settled, and the plaintiff, a passenger, in fright, leaped from the top of the coach and was injured.  In *Hegeman* v. *Western Railroad Corporation* (13 N. Y. 9) a passenger on a steam railroad car was injured in consequence of the break of an axle.  In

*Bowen* v. *New York Central R. R. Co.* (18 N. Y. 408) the declaration was upon the careless running of the train, and the failure to maintain fences, whereby the defendant's engine struck a stray upon the track, and the train was thrown from the rails. *Deyo* v. *New York Central R. R. Co.* (34 N. Y. 9) was the affirmance of a nonsuit, and the opinion simply declares the principle. In *Maverick* v. *Eighth Avenue R. R. Co.* (36 N. Y. 378) the street car was followed for several blocks by a hook and ladder truck speeding to a fire, confined by the obstruction of the street to the rails; the conductor stopped the car when the truck was within fifteen or twenty feet of it, and led the passenger out to the rear platform of the car, where she was injured. In *Caldwell* v. *New Jersey Steamboat Co.* (47 N. Y. 282) a passenger was injured by the explosion of a boiler in a steamboat, and the plaintiff gave evidence of defective construction and of carelessness of those in charge. In the *Stierle Case* (*supra*), where the degrees of care were directly presented, GRAY, J., in speaking of the rule of the highest degree of care, says: " The strict rule embodied in the plaintiff's subsequent request to charge, would be proper in a case where the accident resulted from a situation from which grave injury might be expected and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it. Such was the situation, for instance, in the *Maverick Case* (36 N. Y. 378) and in the *Coddington Case* (102 N. Y. 66)."

The question then is whether, under the evidence in this case, the accident resulted from a situation from which grave injury might have been expected, so as to impose the highest obligation short of insurance. The plaintiff was a passenger on the defendant's street surface trolley car. Two car tracks on Grand street and Metropolitan avenue, respectively, converge at a switch so as to form two tracks a short distance from the Grand street bridge, and these two tracks extend along the street and across the bridge. The car was approaching the switch before coming to the bridge, and the heavy wagon of the codefendant was coming in an opposite direction down a grade on the other track. Both car and wagon continued to approach one another and met, but there was no collision until the truck was turned aside by its driver. Then the rear bags of cotton with which it was loaded struck the wooden handles

or stanchions at the middle of the car, shattering them so that the plaintiff was injured by the flying splinters. The accident occurred after the car had proceeded a short distance beyond the switch. The driver of the wagon testified that, in consequence of the weight of his vehicle, its load, and the down grade, he could not arrest his horses or stop his wagon; that he kept on the tracks, kept his wheels between the tracks to travel on the hard pavement, for if he had kept outside he would "get stuck in the softer ground, and with that heavy load it would have been quite a hard thing to get out of there." He also testified: "When I see the car coming up, then I was trying to get out myself, but I couldn't because I had the right wheel inside the track, and the wagon was pretty heavy. And I could not get out of the track with the hind wheels and the hind part of the wagon and the hind bales, you know, bumped up against the car. * * * My wagon swung around and struck the side of the car." Thus, it is apparent that the driver, attempting to give way by clearing one of the rails along which the car was approaching, turned out, but not quickly enough to prevent the load on the rear of his wagon from striking the middle of the car. For plainly, his turn out from the track swung the rear of the wagon towards the center of the passing car. The driver also testified that when he saw the car it was coming up to the bridge, and that he was going down the grade; that he thought the car would stop at the switch, but it did not, and then he made a motion with his hands to make the motorman stop his car, but he did not. In another part of his testimony he says that he made a shout; at another, that he made a motion. The plaintiff's witness May testified that the truck was coming at a regular gait — walking; the driver says that he was going as slow as he could, and that after the accident he went about forty or fifty feet from the car before he could stop on level ground. Plaintiff's witnesses May and Steckelmann testified that the car was going slow at the time of the collision, and there is no evidence to the contrary. There was evidence tending to show that there were other vehicles crossing the bridge about this time, and the driver of the wagon testified that there was one wagon ahead of him. I think that the circumstances did not require an exercise of the "highest degree of care and skill which human foresight could provide." The car, of

course, could not turn out, and it was on its way with a paramount right. The motorman saw nothing more than a heavily loaded wagon coming down a grade at a walk, and, presumably, he knew that it was the ultimate duty of that vehicle to give way to the car. There was nothing in the surrounding circumstances to indicate to him that the driver either would not or could not give way at the proper time by turning out from the rail. I do not overlook the alleged signals, but I think that the signals by making " a shout" to the motorman to stop the car when the driver saw the car coming up towards the bridge and he was going down the grade, or by just making " a motion," or " something more than to motion * * * a motion with my hands," when the heavy wagon was approaching at a regular gait, walking, was not sufficient to bring to the attention of the motorman, in his exercise of proper care, the fact that the continuance to drive the car slowly along its track would result in a situation from which grave injury might be expected, in view of the relative rights and duties of the two vehicles. It is very probable that, if the car had stopped, an accident would not have happened. But the accident which did happen was due to the inability of the driver of the truck to take himself out of the defendant's way in time to prevent, not a direct collision, but contact between the load at the rear of his truck and the middle of the moving car. The driver himself says he could not get out of the track with his hind wheels. If the learned court had gone no further than its charge that the defendant was bound to a high degree of care and skill in the operation of its car, or had even said that the degree should be very high, then the charge would have been unexceptionable under the circumstances of this case. (*Koehne* v. *N. Y. & Queens County R. Co.,* 32 App. Div. 419; affd., 165 N. Y. 603.)

The learned counsel for the respondent insists that the rule of *Keegan* v. *Third Avenue R. R. Co.* (34 App. Div. 297; affd., 165 N. Y. 622) applies. That was a case of collision, but the circumstances which discriminate it were that the south-bound car, which bore the passenger, met a wagon coming north, which, attempting to get out of the way of a car following it, crossed to the west, while the south-bound car was seventy-five feet away, and the gripman ran across the intersecting street at full speed, in the

face of the evident danger involved in the movement of the wagon towards the track.

The judgment should be reversed and a new trial be granted, costs to abide the event.

GOODRICH, P. J., BARTLETT, HIRSCHBERG and HOOKER, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.