Kunz v. Stuart.

---

GOTTLIEB KUNZ *v.* ROBERT L. STUART and ALEXANDER STUART.

In an action by a servant against his master to recover damages for an injury occasioned in the course of his employment, by defective or unsuitable machinery, it must appear that the machinery was in fact defective, that the injury was occasioned by such defect, and that the defendant had notice of it.

Kunz v. Stuart.

Where, in such an action, the plaintiff's own testimony is sufficient to justify a presumption that the accident was the result of the negligence of a fellow workman of the plaintiff, a judgment of dismissal will not be reversed on appeal.

APPEAL by the plaintiff from a judgment entered on a dismissal of the complaint at the trial.

The facts are fully stated in the opinion of Judge HILTON, delivered on the trial, on granting the motion to dismiss the complaint, at the close of the plaintiff's case.

HILTON, J.—The facts in this case are, that the defendants, who are engaged in the sugar refining business in the city of New York, employed the plaintiff to assist in their "Fill House;" that was, to fill the moulds, and place them upon the wagon, or assist others to do so, and to move the wagons from the open space caused by the hatchway; and when the wagon was filled and prepared for hoisting, to hook it to the end of a long chain, supported in equilibrium by a large block. The hatchway was eight feet wide, and the wagon about four or five. One day while he was engaged shovelling up the smear or sugar which had fallen off the wagon, and was about four feet from the hatchway, a fellow workman in one of the upper stories, which one does not appear, called out, "get out," or "look out below there." The plaintiff immediately jumped behind some barrels that were upon the stone floor. The wagon passed by him, breaking one of his legs, and otherwise seriously injuring him. It appears that this course of hauling by a tackle has been used by the defendants for many years, and indeed it seems no other kind had been used by them. It appears, also, that others engaged in the same business, some fourteen or twenty sugar refiners, used what is called the platform, for the purpose of hoisting and lowering goods in sugar refineries. There is no proof whatever as to which means of raising or lowering goods of this kind is the safest.

No expert has been produced to prove that the platform is the safer; that is, that the platform is safer than the tackle. We all know that this mode of hoisting by a hook to the end of a long chain has been in use from time immemorial, and that

Kunz v. Stuart.

this mode of raising by platform has come into use only within the last few years. It appears that those who have used the platforms have had accidents. In one case a man was killed, and in another the brother of one of the witnesses was seriously wounded. Now, these facts involve two considerations, in my judgment; the first is, whether the defendants can be held liable, unless it be shown by proof that the machinery or tackle which they used was not only defective, but was insufficient for the use to which they applied it. The first consideration that the case presents at this stage is, whether the proof justifies the presumption that this machinery has been shown to be defective or insufficient.

Then, again, the facts present another view to the Court, and that is, whether the proof shows that this accident was occasioned by the concurrent negligence of another workman engaged in the same general employment. These are the only two views I propose to consider as the case now stands. And first, the machinery used by the defendants was so simple that the meanest comprehension could work it, and it did not require any skill at all. Nor does it require any skill, in my judgment, to attach this chain. It was the old-fashioned way of hooking a tackle, or attaching a hook to goods to raise them up from the ground. The witness (the plaintiff) says, that his business was to hook this wagon to the end of the chain, and to unhook it, and that he did so. He knew, therefore, the character of the employment, and he cannot complain that he was attending upon a machine that he did not understand. He was doing an act that the meanest comprehension could fully understand. I therefore think, that if the injury is shown to have resulted from the falling of this wagon off the hook, that it was an accident that he should have taken into consideration as one likely to happen when he entered upon the service of attaching this wagon to the hook. And if, by any accident, that wagon was incompletely attached by his fellow-workman above, that was a consideration he should have guarded against, or have refused the employment altogether. Now, it has been said that the fact of a spring having been placed on this hook after the accident occurred, is proof positive that this hook was defective at the time of the accident. I don't so understand the effect of that

28

testimony; it merely shows that they were trying a new experiment, in opposition to the common course of practice of years, in order to guard against all danger. At least it appears that no accident has happened before this, and it may be that a similar case may arise from the fact of using that spring on the hook. Nor can it be said that the fact of using a platform would have prevented this injury, because it does not seem to have resulted from falling off the hook. There is no proof in the case, whatever, to show that this thing fell from the hook—and it might just as well have rolled off the end of the hatchway under the platform, in case a platform was used. Therefore I do not think that the facts in the case justify me in supposing that if the platform had been used, no injury would have occurred. The fact is, that some use platforms and some use hooks; and there may be not only a difference of opinion as to which is the safer, but also as to which is the more convenient. No doubt the platform carries a larger quantity of goods—but whether it is more safe and more prudent to use a platform than the ordinary hook and tackle, is yet to be determined. At all events, there is no evidence before me to justify me in presuming that the platform is the safer mode.

I now come to the only other question in the case, and one which must determine it. That is, whether this accident and the injury to the plaintiff resulted from the negligence of a fellow-workman, or if there is anything in the case to produce a doubt as to whether this was the result of the negligence of a workman in the story above, in precipitating this wagon down on the workman below; because there is no question, if this was the result of the negligence of the workman above, that the defendants cannot be held liable. Now the proof does not show affirmatively that this wagon was ever attached to the hook, or there is not the slightest suspicion that this wagon fell from the hook. We simply have proof of the calling out or exclamation from above, and the proof that the workman saw the wagon coming down, unattached to any hook whatever. Now it has been said by counsel, you cannot put a case to a jury upon balanced evidence. You must show affirmatively that the defendant is liable before the case can go to the jury. In this case, it appears that the workmen, at the time this accident occurred, were engaged in the hoisting and lowering of the wagon. That was the business of the day—one

Kunz v. Stuart.

attending below, the other above; one to receive, the other to send up or send down; and whilst thus engaged, this wagon fell through the hatchway. ' Now it seems to me, in the absence of any proof, the presumption must be that this fell without being attached; and if it were the fault of the workmen, defendants cannot be held liable.

I therefore think the complaint must be dismissed.

From the judgment entered on the ruling of the Judge, and an order dismissing a motion for a new trial, the plaintiff appealed to the General Term.

*F. S. Stallnecht and T. C. T. Buckley,* for appellant.

I. The complaint was improperly dismissed. (1) ·The master is always responsible for injuries resulting to his employees from his personal negligence or misfeasance. The use of improper implements or insecure tackle, or the retaining of incompetent servants, are acts of negligence and misfeasance (*Keegan* v. *Western R. R.,* 8 N. Y., 175; *Roberts* v. *Smith,* 2 Hurls. & Norm., 213; *Patterson* v. *Wallace,* 1 McQueen's Appeal Cases, 748; *Brydon* v. *Stewart,* 2 Id. 30; *Noyes* v. *Smith,* 29 Vermont Rep. 59—64; *Ryan* v. *Fowler,* 24 N. Y., 412; *Clarke* v. *Holmes,* 7 Hurl & Norm., 793). (2) Whether the tackle in use for hoisting and lowering, at the time the plaintiff was injured, was such as defendants should have used, must of necessity be a *question of fact to be determined by a jury,* and not a matter of law, to be determined by the Court (*Ryan* v. *Fowler,* 24 N. Y. Rep., 413). (3) A *prima facie* case of negligence was established against defendants.

*Edgar Logan,* for respondents.

I. The appellant himself, as a part of his employment, hooked and unhooked these wagons. If there was danger, he was aware of the same, and contracted for a compensation adequate to the risk he ran (Story on Agency, § 453e; *Wright* v. *N. Y. Central R. R.,* 25 N. Y., 562; *Sherman* v. *Rochester and Syracuse R. R.,* 17 N. Y., 153; *Farwell* v. *The Boston & Worcester R. R. Co.,* 4 Metcalf, 49). . A servant, to recover of his principal for an injury, happening in the course of his service, through defects in the machinery used in the discharge of his duties, must prove actual notice to the principal of the defects; and in order

to be able to prove notice, he must allege it in his complaint. (*McMillan* v. *The Saratoga and W. R. R. Co.*, 20 Barb., 449; *Langlois* v. *Buffalo and Roch'r R. R.,* 19 Barb., 364; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn., 548).

II. The appellant, to entitle him to have the case submitted to the jury, was bound to show why the wagon fell. A mere allegation that it fell through carelessness and negligence of the respondents, was not sufficient. It should have been supported by proof. (*Terry* v. *The N. Y. Cen. R. R. Co.*, 22 Barb., 574).

BY THE COURT.—CARDOZO, J.—This is a case of great hardship, but after careful reflection, I am constrained to say that no rule of law was violated on the trial, and that the action, on the evidence adduced, cannot be maintained.

The principles governing actions of this class have quite recently undergone examination in the case of *Wright* v. *New York and Central Railroad Company* (25 N. Y., 562), and are not only very well settled now, but were scarcely the subject of dispute between the counsel on the argument before us.

To render the master liable for an accident occasioned by the use of defective machinery, knowledge of the defect must be brought home to him. There is no proof in this case either that the machinery was in fact defective—or, if it were, that the defendants had notice of it, or that the accident occurred by reason of the defect.

The proof shows that the use of platforms is not so general as to justify a *presumption*, (and there is no evidence that such is the fact), that that method is better or less dangerous than the one used by the defendants. The testimony is quite consistent, to say the least, with the idea that this accident was the result of negligence on the part of a fellow-workman of the plaintiff.

I do not see that the case of *Clark* v. *Holmes* (7 Hurl. & Norm., 793), in any way aids the plaintiff.

In that case the defendant was held liable, and very justly—for there was not only shown notice to him of the defect by which the damage was occasioned, but there was proof of an agreement, before the accident, that the defect should be remedied.

The judgment should be affirmed.