vessel was lying moored to a wharf, in a safe position. The defendant's vessel, moving, collided with it; and it is apparent that the defendant is called upon to excuse itself for causing the injury thereby resulting. Instead of requiring the defendant to do this, the learned court, by the charge in question, required the plaintiff to show affirmatively that the defendant had been guilty of negligence. This, we think, was shifting the burden of proof, and was not requiring the defendant to prove that which it was compelled to prove in order to escape the result of the injury which had been inflicted by its own vessel.

The evidence in the case showed that it was a common thing in other boats for these bitts to pull out, and that upon going to sea this bitt had been pulled out of the scow in question. The boatman in charge of the scow swore that he had looked at the bitt in question, but he does not appear to have examined it closely. Upon this condition of the proof, the jury may very well have thought that the plaintiff had not established the fact that this bitt had been out of order the length of time required by the charge to place the defendant in default; whereas, upon the same evidence, they might also have come to the conclusion that the defendant had not shown that it had used such diligence as would absolve it from the charge of negligence. The difficulty in the case seems to have been caused by applying the rule which obtains in reference to the condition of the streets, etc., in the city, which rule has no application to those cases where the city is the aggressor, as in the case at bar.

For these reasons, we are of opinion that the judgment was erroneous, and that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.

---

(9 App. Div. 521.)

### DOYLE v. WHITE.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER—DEFECTIVE APPLIANCES.

A master is not chargeable with negligence because of the breaking of an appliance of the usual size and material, but improperly welded, where the appliance was manufactured by a responsible concern, from which the master purchased it, with others, and it was put in position by a fellow servant, and no weakness was apparent to ordinary observation. 35 N. Y. Supp. 760, affirmed.

2. SAME—EVIDENCE—PRIOR ACCIDENTS.

Where a servant was injured in consequence of latent defects in an appliance which, with others, was purchased by the master from a responsible concern, evidence as to whether any of the appliances broke "the day or a day or two previous" does not tend to show that the master had notice, before the accident, that the appliances were defective, and was therefore properly excluded. O'Brien, J., dissenting.

Appeal from superior court of New York city, jury term.

Action by James T. Doyle against J. Gilbert White for personal injuries. The complaint was dismissed (35 N. Y. Supp. 760), and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. E. Kelly, for appellant.

H. C. Smyth, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for injuries alleged to have been sustained by the plaintiff through the defective construction of a certain eyebolt, which defective construction caused the bolt to break. The plaintiff was employed by the defendant as a lineman in the construction of an electric railroad on Baronne street, in the city of New Orleans, and was injured while helping to string a feed wire over a certain span wire which connected two poles across the street. This span wire was fastened to the eyebolt at the top of each pole, and it was drawn tight, so that the tops of the poles were drawn towards each other. The plaintiff had his left foot on the top round of the ladder and his right leg around the pole. He had hold of the feed wire, and was just laying the feed wire in a wire hook that was hung over the span wire. As the weight of this feed wire rested in the wire hook, the eyebolt broke. The tension being removed, the pole flew back, and the plaintiff was thrown to the ground. The eyebolt was welded, and it parted at the weld. A good eyebolt of the size of the one which broke ought to hold 2,000 pounds. It appeared from the evidence that this bolt was not manufactured by the defendant, but was bought by him of reputable manufacturers, and to all outward appearances was entirely suited for the purpose to which it was put. Upon the foregoing facts appearing, the learned justice dismissed the complaint, and from the judgment thereupon entered this appeal is taken.

A motion for a new trial was made, and the learned court below wrote a careful opinion in denying the motion, and we might rest this decision entirely upon that opinion were it not for the claim made upon the part of the appellant that there was no proof that the defendant ordered the eyebolt from responsible and well-known manufacturers, as was assumed by the court below; and that, the defendant having offered proof, the trial judge had no right to pass upon the truthfulness of this proof, nor upon the conflict arising on the evidence, but that this was for the jury.

It is also urged that the court erred in the exclusion of testimony. Upon an examination of the evidence in the case we think the learned judge was entirely correct in holding that the evidence showed that the eyebolts in question were bought from a responsible manufacturer, who had a good reputation. It is true that one of the witnesses who was called to prove these facts was at first unable to remember the name of the corporation which had manufactured the bolts; but, upon being shown the bill for the eyebolts, which had been paid by him, he stated the name of the corporation, which corresponded with the description previously given by him in his testimony; and his evidence was to the effect that the reputation of these manufacturers was of the best. Another witness, who was the treasurer of the manufacturer, was also examined, and

testified to the same effect, and there was no evidence whatever offered to the contrary. There was, therefore, no conflict of evidence, and nothing in the case from which the jury could find that the bolts in question had not been purchased from a reputable manufacturer; and, it appearing that the defect in the bolt was one which could not be detected upon an external examination, the defendant was shown to have done all that the rules of law required him to do, as appears in the opinion of the learned court below. There was, therefore, no assumption upon this subject, in the opinion of the court, which was not fully borne out by the evidence.

But it is urged that the court erred in excluding the following question: "Q. Did any of these ringbolts break the day or a day or two previous to that accident?" This was objected to, the objection sustained, and an exception taken by the plaintiff's counsel. Then the question was asked, "Q. Previous to that?" Same objection, ruling, and exception. It is clear that the question first excluded was entirely incompetent, because the breaking of a similar bolt upon the day of the happening of the accident did not tend to prove that the defendant had notice prior to the accident that the bolts were defective. The next question is not subject to this criticism, because it refers to a time previous to the happening of the accident. But the difficulty with this question was that there was nothing to show that there was any intent to prove the breaking of more than one of these eyebolts. There was no claim made by the counsel that he intended to prove the circumstances under which the breaking occurred, or that it was of such a character as to call the attention of the defendant to any defect in the eyebolts. If the counsel intended to offer further proof, so as to make this question material by reason of circumstances attending the breaking, or by the fact that breakages were of so frequent occurrence as to indicate weakness in the bolts, he should have so informed the court, so that the court might have understood what was claimed by the counsel to be the pertinency of the evidence. The breaking of one eyebolt was not evidence of the character of the lot, it appearing from the facts testified to upon the trial that the weakness resulted from an imperfect welding, which could not be detected by examination, and which was not a defect of manufacture which would necessarily or probably run through the lot of eyebolts bought. We do not think, therefore, that the court was bound to know that there would be any attempt upon the part of the plaintiff by additional proof to make evidence of this character pertinent.

Under all the circumstances of the case we do not see that any error was committed; and for the reasons stated in the opinion of the court below, as well as those here given, we think the judgment should be affirmed, with costs.

WILLIAMS, PATTERSON, and INGRAHAM, JJ., concur.

O'BRIEN, J. (dissenting). I think the rulings excluding evidence of the breaking of eyebolts previous to the accident was error. The

plaintiff was met at the very outset of his attempt to prove previous breakings by an objection which was sustained, and he was not obliged to go further to strengthen his exception to the ruling. Painton v. Railway Co., 83 N. Y. 7.

---

(10 App. Div. 9.)

### PEOPLE v. AMERICAN STEAM-BOILER INS. CO.

#### In re JOHNSON & JOHNSON.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

CASUALTY INSURANCE—LIMITATION OF ACTION—CLAIM UNDER POLICY.

　　A claim against a casualty insurance company for disbursement for surgical aid to a person injured, and for the defense of an action by such person for the injuries, is governed by the same limitation as is prescribed by the policy for the losses arising under the policy; no independent contract by the insurer to pay such items being shown.

Appeal from special term, New York county.

Claim by Johnson & Johnson, a foreign corporation, against Henry S. Ward, as receiver of the American Steam-Boiler Insurance Company. The claim was dismissed, and claimant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William C. Wallace, for appellant.

J. C. O'Conor, for respondent.

PATTERSON, J.　The claimant, Johnson & Johnson, a New Jersey corporation, held a policy of insurance issued by the American Steam-Boiler Insurance Company. That company went into the hands of a receiver, to whom the claim of Johnson & Johnson was presented. It was rejected. A reference was agreed to, and, after a hearing, the referee reported adversely to the claimant. From the judgment entered, after confirmation of the report of the referee, dismissing the claim with costs, this appeal was taken.

According to the verified statement of claim presented to the receiver, that claim consisted of a demand for payment of the amount of a judgment recovered in New Jersey by one Martin Cauley for injuries received by him while in the employment of Johnson & Johnson, and for moneys paid out and expended by it for immediate medical aid rendered to Cauley at the time his injuries were received, and for moneys expended in the defense of the Cauley action. These two items of expense are alleged in the statement to have been disbursements incurred at the special instance and request of the insurance company, and appear to be counted on as constituting causes of action arising independently of the policy. That policy was issued to cover the year 1890, from the 1st of January. It contained, among other things, a clause insuring Johnson & Johnson against "accidental personal injury and loss of human life, for which injury or loss of life the assured may be liable to his employés or to any other persons whomsoever, and which shall be caused by said boilers or any machinery of whatever kind,