[No. 11656. Department Two. — September 24, 1889.]

JOHN TREADWELL, RESPONDENT, *v.* W. FRANK WHITTIER ET AL., APPELLANTS.

NEGLIGENCE — PERMANENT DAMAGES — DIMINISHED CAPACITY FOR BUSINESS — PLEADING — SPECIAL DAMAGES — INSTRUCTION. — The future and permanent effect of injuries necessarily resulting to the plaintiff from the negligence of the defendant need not be specially alleged in order to warrant a recovery therefor, but are recoverable under the general *ad damnum* clause. If the complaint sets out in detail the injuries received, and shows that they are of a permanent character, so that the court can see that they will necessarily render plaintiff less capable of attending to his business, an instruction to the effect that the jury may take into consideration " the permanent loss and damage, if any is proved, arising from any disability resulting to the plaintiff from the injury in question which renders him less capable of attending to his business than he would have been if the injury had not been received," is proper under the complaint. It is only damages which are not the necessary result of the injury which must be specially pleaded.

ID. — FALL OF HYDRAULIC ELEVATOR — BURDEN OF PROOF — PRESUMPTION OF NEGLIGENCE. — A plaintiff injured through the fall of an hydraulic elevator operated by the defendants, in which he is being carried as a

passenger, need only prove that he sustained injury by the breaking of the machinery by which he was carried, and that such machinery was under the control and management of the defendants, in order to make a case raising a presumption of negligence on the part of defendants, and is not bound to prove what constituted the fault or negligence of the defendants. The burden is then thrown on defendants to show that they were not guilty of negligence, by proof that the injury was caused by inevitable casualty, or proof of any fact relieving defendants from responsibility.

ID. — PREPONDERANCE OF EVIDENCE — MORAL CERTAINTY — INSTRUCTION. — When the court instructs the jury that the plaintiff must prove the fault or negligence of the defendant to the satisfaction of the jury by a preponderance of evidence, it is not error to refuse further to instruct them that the plaintiff must make such proof to a moral certainty. The "moral certainty" required by section 1826 of the Code of Civil Procedure is produced when a matter is proved to the satisfaction of a jury by a preponderance of evidence.

ID. — RESPONSIBILITY OF OPERATOR OF ELEVATOR — COMMON CARRIERS. — Persons operating an elevator in lifting passengers are to be treated as carriers of passengers, and the same duties and responsibilities rest on them as to care and diligence as on the carriers of passengers by stagecoach or railway. Though not insurers of the absolute safety of the passengers, they are bound to the utmost care and diligence of very cautious persons, as far as human care and foresight can go, and are responsible for injury occasioned by the slightest neglect against which human prudence and foresight might have guarded. The responsibility is proportioned to the danger, and is of the highest character in the case of those who operate elevators for lifting persons from one level to another.

ID. — IMPROVEMENTS IN MACHINERY — TESTS OF SAFETY — INSTRUCTION. — Common carriers of passengers are bound to keep pace with science, art, and modern improvement in supplying safe vehicles, and must adopt the most improved modes of construction and machinery and appliances of safety in known use. They cannot be excused from the vigilant use of all known tests of safety reasonably practicable, by the fact that the vehicle was originally constructed by a competent and skilled manufacturer. An instruction asked to the effect that the operators of an elevator are not liable for an accident caused by a defect or flaw in one of the piston-rods of the elevator apparatus, which was not discoverable on a reasonable and careful examination, is properly modified by inserting the words "according to the best known tests reasonably practicable."

ID. — EVIDENCE — HEARSAY — CAUTION OF SKILLED MECHANIC — SCIENTER. — Evidence that the defendants were cautioned by a skilled mechanic who had repaired their elevator, that they were running it carelessly, is competent and material to show a knowledge by the defendants that they were operating the elevator incautiously and carelessly.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*McAllister & Bergin, D. M. Delmas,* and *J. C. Denson,* for Appellants.

*Lloyd & Wood,* and *Garber & Bishop,* for Respondent.

THORNTON, J.—The plaintiff brought this action to recover damages for injuries to his person, caused by the falling of an hydraulic elevator operated by defendants in their store, on which he (plaintiff) was riding at the time. The cause was tried before a jury. Verdict and judgment passed for plaintiff, and the defendants prosecute this appeal from the judgment, and from an order denying their motion for a new trial.

The action is based on the negligence of the defendants in using the elevator with broken, insecure, and insufficient machinery, in not taking proper care of such machinery, and in the running and operating of the elevator, in consequence of which the plaintiff, without any fault or negligence on his part, received the injuries of which he complains.

We insert here the averments of the complaint specifically setting forth the cause of action:—

"That defendants are, and at all times hereinafter mentioned were, copartners in business, using trade and commerce at the city and county of San Francisco under the firm name and style of Whittier, Fuller, & Co.

"That the said defendants as copartners did at the times hereinafter mentioned conduct and carry on business in a building at the southwest corner of Pine and Front streets, in said city and county, comprising three stories, or floors, and a basement, and the defendants at said times had owned and maintained an elevator, or hoist, operated by machinery, situated in the basement of said building, and wholly under the control and management of the said defendants and in their exclusive use, which said hoist or elevator was used and intended to be

used by defendants for the purpose of transporting and carrying their customers, and those in said building for the purpose of trading with them, or such persons as they might request to be so transported, and their merchandise, to and from the different floors or stories of said building.

"That heretofore, to wit, on the twenty-third day of December, 1878, this plaintiff, being lawfully in the said store or building of the defendants as a customer, and for the purpose of trading with defendants, was requested by the said defendants to get upon the said hoist, or elevator, for the purpose of being carried from the upper or third floor of said building to the lower or street floor thereof; and then and there the said plaintiff, in pursuance of such request, got into the said elevator, or hoist, for the purpose aforesaid, and immediately thereupon, when the said defendants undertook to transport or lower the said plaintiff from the said upper or third floor to the lower or street floor of their said store, the said hoist, or elevator, by reason of the broken, insecure, and insufficient machinery by which the same was run, and by reason of the negligent and careless conduct of the defendants in the care of the said machinery, and in the running and operating of the same, and in the running and operating of the said hoist or elevator, without any fault or negligence on plaintiff's part whatsoever, was precipitated from said upper or third floor into the basement of said building with great and excessive rapidity and violence, and the plaintiff was thereby greatly bruised, broken, damaged, and injured in his body and limbs, and became and was thereby made sick, sore, lame, and disordered, and so remained for a long space of time, to wit, from thence hitherto, and said plaintiff sustained a fracture of his left leg in the ankle-joint, and was otherwise seriously injured, so that he was confined to his bed for a long period of time, to wit, three months, and was thereafter for a period of four

months unable to walk, save with crutches, and his said left leg, by reason of said fracture, is and always will be shorter than his other or right leg, and the plaintiff has sustained other and internal injuries from which he can never recover, and the same will. and do permanently affect and impair the health, strength, and activity of plaintiff, and said plaintiff, for a long period of time, to wit, ever since said accident, has suffered great pain of body and anguish of mind.

"That plaintiff, at the time aforesaid, had no notice or knowledge that the machinery whereby the said elevator, or hoist, was run or operated was out of order, or broken, or insecure, and defendants had full notice and knowledge thereof."

On the argument and in the briefs, several points were and are elaborately discussed and presented for consideration and determination. To the consideration of these points we proceed in the order in which they were presented by counsel for defendants (appellants here) on the oral argument.

1. It is argued that the court erred in giving the tenth instruction requested by the plaintiff. That instruction was given in these words: "If, under the evidence and instructions of the court, the jury find for plaintiff, then, in assessing the plaintiff's damages, the jury may take into consideration, not only the loss and immediate damage arising from the injuries received at the time of the accident, but also the permanent loss and damage, if any is proved, arising from any disability resulting to the plaintiff from the injury in question, which renders him less capable of attending to his business than he would have been if the injury had not been received."

It is said by counsel for defendants that the loss or impairment of the capacity to attend to business is in the nature of special damages, and must, as such, be specially pleaded; that if not specially pleaded, no evidence

can be introduced to show diminished capacity for business, nor any inquiry legitimately made in respect to it.

The allegation of damage in the complaint has been quoted above at large. It is averred and set forth by plaintiff that by reason of his fall he was greatly bruised, broken, damaged, and injured in his body and limbs, and became and was thereby made sick, sore, lame, and disordered, and so remained up to the time of action brought; that he sustained a fracture of his left leg in the ankle-joint, and was otherwise seriously injured, so that he was confined to his bed for three months, and for a period of four months thereafter was unable to walk except with crutches; that his left leg, by reason of the fracture, is and always will be shorter than his right leg; that he sustained other and internal injuries from which he will never recover, and the same will and do permanently affect and impair his health, strength, and activity; and that ever since the fall he has suffered great pain of body and anguish of mind.

Damages which *necessarily* result from the act complained of are denominated general damages, and may be proved under the *ad damnum* clause or general allegation of damage, while those which are the natural consequences of the act complained of, and not the necessary result of it, are termed special damages.

The defendant must be presumed to be aware of the damages which necessarily result from the act done, and therefore he cannot be held to be taken by surprise when proof is offered of such necessarily resulting damage. But as to the damage naturally, though not necessarily, resulting from the act done, the defendant cannot be presumed to be aware of, and therefore, in order to prevent a surprise on defendant, it must be specially set forth in the complaint, or the plaintiff will not be permitted to give evidence of it at the trial. (On this subject see Chit. Pl., 16th Am. ed., 348; 2 Greenl. Ev., sec. 254;

*Stevenson* v. *Smith*, 28 Cal. 103; 87 Am. Dec. 107; *Potter* v. *Froment*, 47 Cal. 165; *Hunter* v. *Stewart*, 47 Me. 419.)

Now, considering the physical injuries complained of and set forth in the complaint by plaintiff, viz., the fracture of his right leg, by reason of which it will always be shorter than his other leg, and that he has sustained other and internal injuries from which he can never recover, and which will permanently impair his health, strength, and activity, the court will not be straying from the rule above stated if it directs the jury, in assessing the amount of damages sustained by plaintiff, to take into consideration the permanent loss and damage, if any is proved, arising from any disability resulting to the plaintiff from the injury complained of, which renders him less capable of attending to his business than he would have been if the injury had not been received.

The court in this instruction only directed the jury to take into consideration, in assessing the damages, such as necessarily resulted from the injuries set forth in the complaint, if such injuries were proved by the evidence. That the injuries set forth will necessarily render a person less capable of attending to his business is clearly apparent, and no argument is needed to make it clear.

The conclusion here reached is sustained by the rulings in the following cases: *Morris* v. *C., B., & Q. R. R. Co.*, 45 Iowa, 30; *Conner* v. *Pioneer etc. Co.*, 29 Fed. Rep. 681; *Wade* v. *Leroy*, 20 How. 44; *Nebraska* v. *Campbell*, 2 Black, 592; *Elkhart* v. *Retter*, 26 Ind. 140; *Indianapolis* v. *Gaston*, 58 Ind. 224; *Potter* v. *Metropolitan R. R. Co.*, 28 L. T., N. S., 735; *McKeever* v. *Market Street R. R. Co.*, 59 Cal. 294; *Bradbury* v. *Benton*, 69 Me. 199; *Baltimore etc. R. R. Co.* v. *Wightman*, 29 Gratt. 431, 440, 441; 26 Am. Rep. 384; *Tyson* v. *Booth*, 100 Mass. 266; *Roberts* v. *Graham*, 6 Wall. 578; *Ward* v. *Smith*, 11 Price, 19.

We refer particularly to the case of *Wade* v. *Leroy*, above cited. In that case the court said: "The evidence conduced to prove that the plaintiff was seriously in-

jured." Subsequently in the opinion these observations were made: "That before that time he had been concerned in conducting a business that required a degree of mental and bodily vigor, and that his time was of some pecuniary value, or that he had suffered a loss of some profit; and that, after some detention in New York, he returned to his house in an infirm condition,—so infirm that his medical attendant and adviser deemed him incapable of pursuing any ordinary business occupation, and advised him to abstain from personal exertion."

"This evidence would certainly assist a jury to determine that the plaintiff has sustained an injury of no slight character,—an injury to his person which was followed by expense, suffering, and loss of time, which had for him a pecuniary value. These were the direct and necessary consequences of the injury, and sustained strictly and almost exclusively as an effect from it."

In *Bradbury* v. *Benton,* above cited, the action was for a personal injury, and no special damages were alleged. The point was as to the recovery of prospective damages. As to this the court, per Libby, J., said: "In legal contemplation, all damages which will be sustained as the effect of the injury are sustained immediately. The future effect of the injuries is not special damages, which must be alleged, but general damages, which necessarily flow from the injuries received. (*Hunter* v. *Stewart,* 47 Me. 419.) The declaration specifically describes the injuries received. It is sufficient to authorize a recovery of all damages which had been or would be sustained by the plaintiff as the natural and ordinary effect of the injuries."

We will remark here that in our judgment the words "his business," used in the instruction, referred to any business which plaintiff might undertake to carry out, and that there is no difference in meaning between the words "his business" and "his ordinary business."

Plaintiff was entitled to the instruction as given, and the court committed no error in giving it.

2. The defendants requested the court to give the following instruction: "Plaintiff, in order to recover in this action, must prove to your satisfaction that defendants have been guilty of some fault or negligence, and must also prove what that fault or negligence was, and this plaintiff must do by a preponderance of evidence *and to a moral certainty.*"

This instruction was refused by the court as asked, and to this refusal defendants excepted.

The court struck out the words at the end of the request "and to a moral certainty," and gave it as thus modified. To this defendants also excepted.

It is argued by defendants that they were entitled to have the instruction given as asked, by reason of the provisions of section 1826 of the Code of Civil Procedure. That section is as follows: "The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty; because such proof is rarely possible. Moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind."

We are inclined to the opinion that giving the instruction as asked would have been error, and that the giving it as modified was also error.

The law does not put on the plaintiff the burden of proving, not only fault or negligence on the part of the defendants, but also "what that fault or negligence was." The law requires proof that plaintiff has sustained an injury by the breaking of the machinery by which he is carried or transported, and that such machinery was under the control and management of the defendant. When plaintiff has made such proof, he has made out a case which entitles him, if not rebutted or disproved, to recover of defendant. The plaintiff by such proof has made a case showing negligence on the part of defendant. The bur-

den is then thrown on defendant to show that he was not guilty of negligence for which he could be charged. This he can do by going into proof of the manner in which the hurt occurred, and showing that it was caused by an inevitable casualty, for which the law imposed on him no responsibility, or by establishing any fact which relieved him of responsibility.

Take, for instance, the case of a passenger alleged to be injured by the negligence of a carrier in so carelessly driving a coach on which plaintiff was a passenger that it was overturned and plaintiff was injured. The plaintiff only is called on to prove the overturning of the coach, and that he was hurt by it. This overturning the defendant is called on to show was not caused by his negligence at all. This he may show by direct proof that he was not negligent at all, or that the overturn occurred from some latent defect in the machinery which broke and caused the overturn. The particular fault or negligence may come out on the evidence in the cause, but plaintiff is not required to prove what caused the overturn.

The above is virtually established to be law by two cases decided by this court. Reference is here made to *Boyce* v. *California Stage Co.*, 25 Cal. 468, and *Lawrence* v. *Green*, 70 Cal. 420.

In this case the plaintiff was only called on to show that he was hurt by the breaking of the machinery of the elevator by which he was injured. When this is done he has made out a case, on which, there being no other evidence introduced, he has a right to recover.

The plaintiff is not called on to make any more particular proof. Doubtless there are exceptions to this rule, but this case is not one.

For the above reasons we are inclined to think that the instruction asked and refused and the instruction as given were erroneous.

But conceding that the views above stated are not ten-

able, we are still of opinion that the court below by its ruling committed no error of which defendants can complain.

The defendants urge that they are entitled to the instruction that their fault or negligence should have been proved "to a moral certainty" under the provisions of section 1826 of the Code of Civil Procedure. That section is fully quoted above.

By this section that degree of proof is required to establish a matter in dispute which produces conviction in an unprejudiced mind. When the evidence is such as to produce conviction of the truth of a fact in an unprejudiced mind, such a fact is said to be established to a moral certainty. Such evidence is deemed to be satisfactory, and will justify a verdict. It is so declared in the Code of Civil Procedure by section 1835. When a matter is proved to the satisfaction of a jury by a preponderance of evidence, then it can be affirmed that they are convinced of its truth, and being thus convinced of its truth, they can base a verdict on it. (Code Civ. Proc., sec. 2061, subd. 5, and sec. 1835, *supra.*) It follows from the foregoing that when the jury were told that the plaintiff, in order to recover in this action, must prove *to their satisfaction* that the defendants had been guilty of what was stated in the instruction complained of, by a preponderance of evidence, they were, in effect, told that they must be convinced from the evidence to a moral certainty that defendants were so guilty, or the plaintiff was not entitled to recover. They could not be satisfied that the plaintiff had made such proof without being convinced of its proof to a moral certainty. The instruction as given was the equivalent of the requirements of section 1826 of the Code of Civil Procedure, and hence there was no error in the rulings of the court in regard to the request refused or the instruction given.

If there was any error committed by the court, it was

in giving an instruction too favorable to defendants, of which they cannot be heard to complain.

3. Defendants contend that the court erred in modifying the instruction numbered nine, requested by them.

The instruction as asked by defendants was as follows: "If the accident in question was caused by a defect or flaw in one of the piston-rods of the elevator apparatus, which defect or flaw was not discoverable on an ordinary, reasonable, and careful examination, then your verdict should be for the defendants."

The court modified the instruction so as to read as follows: "If the accident in question was caused by a defect or flaw in one of the piston-rods of the elevator apparatus, which defect or flaw was not discoverable on a reasonable and careful examination *according to the best known tests reasonably practicable,* then your verdict should be for the defendants."

It is said by defendants that it was error for the court to insert the words "*according to the best known tests reasonably practicable.*"

The defendants used their elevator in lifting persons vertically to the height of forty feet. That they were carriers of passengers, and should be treated as such, we have no doubt. The same responsibilities as to care and diligence rested on them as on the carriers of passengers by stage-coach or railway.

In *Fairchild* v. *California Stage Company,* 13 Cal. 599, which was an action by a passenger against a stage-coach proprietor, it was held that proprietors of stage-coaches are not insurers or warrantors of the safety of passengers to the same extent as common carriers of goods, still they are liable for the slightest neglect, and are held to extraordinary diligence and care. The court cites sections 592 and 601 a of Story on Bailments, and *Farish* v. *Reigle,* 11 Gratt. 711, 62 Am. Dec. 666, where the same rule is laid down. As to the vehicle, Judge Story says, in section 592, of such proprietors: "They are

bound to provide coaches reasonably strong and suffi-
cient for the journey, with suitable harness, trappings,
and equipments, and to make a proper examination
thereof previous to each journey." And further:
" Hence it has been held that if there is any defect in
the original construction of a stage-coach, as, for exam-
ple, in an axle-tree, although the defect be out of sight,
and not discernable upon a mere ordinary examination,
yet if the defect might be discovered by a more minute
examination, and any damage is occasioned thereby, the
coach proprietors are answerable therefor. The same
rule will apply to any other latent defect, which might
be discovered by more minute examination and more ex-
act diligence, whereby the work is not roadworthy, and
a damage thereby occurs to any passenger." In section
601 a, Justice Story says that "the law will, in tender-
ness to human life and limb, hold the proprietors liable
for the slightest negligence, and will compel them to re-
pel by satisfactory proofs every imputation thereof."

In *Farish* v. *Reigle, supra,* the question was directly
raised whether a stage-coach proprietor was responsible
for more than ordinary diligence. The court unani-
mously held that he was. The court approved of the
doctrines of Justice Story on this subject. In the cases
cited, the court, speaking by Justice Daniel, said:
" The liabilities of such carriers naturally flow from
their duties. As they are not, like common carriers of
goods, insurers against all injuries, except by the act of
God, or by public enemies, the inquiry is naturally pre-
sented, What is the nature and extent of their respon-
sibility? It is certain that their undertaking is not an
undertaking absolutely to convey safely. But although
they do not warrant the safety of passengers at all
events, yet their undertaking and liability go to the
extent that they and their agents possess competent
skill, and that they will use all due care and diligence in
the performance of their duty. But in what manner

(the author asks) are we to measure this due care and diligence? Is it ordinary care and diligence, which will make them liable only for ordinary neglect? Or is it extraordinary care and diligence, which will render them liable for slight neglect? As they undertake for the carriage of human beings, whose lives and limbs and health are of great importance, as well to the public as to themselves, the ordinary principles in criminal cases, where persons are made liable for personal wrongs and injuries arising from slight neglect, would seem (he says) to furnish the true analogy and rule. It has been accordingly held that passenger carriers bind themselves to carry safely those whom they [admit] into their coaches, as far as human care and foresight will go, that is, for the utmost care and diligence of very cautious persons; and of course they are responsible for any, even the slightest, neglect." (Sec. 601.)

"In section 601 a, the further proposition is stated, that 'when injury or damage happens to the passengers by the breaking down or overturning of the coach, or by any other accident occurring on the ground, the presumption *prima facie* is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent; for the law will, in tenderness to human life and limb, hold the proprietors liable for the slightest negligence, and will compel them to repel by satisfactory proofs every imputation thereof.'"

This ruling, in *Fairchild* v. *California Stage Co.*, 13 Cal. 599, was approved in *Boyce* v. *California Stage Co.*, 25 Cal. 468, and *Lawrence* v. *Green*, 70 Cal. 417, 420, 421.

It thus appears to be settled law in this state that a proprietor of stage-coaches is liable for the slightest neg-

ligence in regard to the vehicle provided by him; that he is responsible to his passenger for the utmost care and diligence of very cautious persons.

In *Rogers* v. *C. P. R. R. Co.*, 67 Cal. 608, it was said by the court: "Manifestly it was the duty of the defendant, a railroad company, to furnish alike to its passengers and employees a suitable and safe road, engines, cars, and appliances for conducting its business," etc.

Certainly the degree of care and diligence to be exercised by a stage-coach proprietor as to the vehicle to be provided by him for the carriage of passengers is just as high as regards a railroad company and the cars or other machinery which it is to provide and furnish for such transportation. The railroad company is bound for the utmost care and diligence of very cautious persons, and is responsible for any, even the slightest, neglect. The same rule applies in both cases, and for the same reason, that each undertakes to carry human beings, whose lives and limbs and health are of great importance, as well to the public as themselves.

In *Maverick* v. *Eighth Ave. R. R. Co.*, 36 N. Y. 378, the rule is stated as well settled that "passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight will go, — that is, to the utmost care and diligence of very cautious persons." The court cites *Brown* v. *New York Cent. R. R. Co.*, 18 N. Y. 408, and *Deyo* v. *New York Cent. R. R. Co.*, 34 N. Y. 9, 88 Am. Dec. 418, where the same rule is laid down.

In *Taylor* v. *Grand Trunk Railroad Company*, 48 N. H. 313, 2 Am. Rep. 229, a large number of authorities are collected in an able opinion by Bellows, J. In this opinion it is declared: "The doctrine of the American courts is still more strict and explicit; and the general current of the authorities is, that the carrier of passengers is bound to the utmost care and diligence of very cautious persons, and is responsible for any, even the smallest,

neglect; holding their undertaking to be to carry their passengers with safety as far as human care and foresight can go. This is distinctly laid down in Story on Bailments, secs. 601, 601 a, and also in 2 Greenl. Ev., sec. 221, and in 2 Kent's Com. \*601, \*602, and Redfield on Railways, c. 17."

In *Philadelphia etc. R. R. Co.* v. *Derby*, 14 How. 486, it is said by the court: "When carriers undertake to carry persons by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence in such cases may well deserve the epithet of gross."

This statement is approved in *Steamboat New World* v. *King*, 16 How. 474, as resting not only on public policy, but sound principles of law. (See Redfield on Railways, sec. 149, note 5.)

The above rule is sustained by *Stokes* v. *Saltonstall*, 13 Pet. 181; in Massachusetts by *Ingalls* v. *Bills*, 9 Met. 1; 43 Am. Dec. 346, and *McElroy* v. *N. H. R. R. Co.*, 4 Cush. 400; 50 Am. Dec. 794; in Maine by *Edwards* v. *Lord*, 49 Me. 279; in Connecticut by *Hall* v. *Connecticut R. S. Co.*, 13 Conn. 320; *Derwent* v. *Loomer*, 21 Conn. 253; *Fuller* v. *Naugatuck R. R. Co.*, 21 Conn. 557, 576; in Vermont by *Hadley* v. *Cross*, 34 Vt. 586; 80 Am. Dec. 699; see also *Hegeman* v. *Western R. R. Co.*, 16 Barb. 353; approved in 13 N. Y. 9; 64 Am. Dec. 517; *Caldwell* v. *Murphy*, 1 Duer, 241; *Camden etc. R. R. Co.* v. *Burke*, 13 Wend. 626; *Railroad Company* v. *Aspell*, 23 Pa. St. 147; *New Jersey R. R. Co.* v. *Kennard*, 21 Pa. St. 203; *Galena etc. R. R. Co.* v. *Yarwood*, 15 Ill. 468; *Galena etc. R. R. Co.* v. *Fay*, 16 Ill. 558; 43 Am. Dec. 323; *Frink* v. *Potter*, 17 Ill. 406; *Frink* v. *Coe*, 4 G. Greene, 555; 41 Am. Dec. 141; *Kenney* v. *Neil*, 1 McLean, 540; *Marcy* v. *Tallenge*, 2 McLean, 157; *Com-*

*wall* v. *Sullivan R. R.,* 28 N. H. 669; *Clark* v. *Barrington,* 41 N. H. 51.

In *New Jersey R. R. Co.* v. *Kennard, supra,* Judge Gibson said "that the carrier is bound to guard the passenger from every danger which extreme vigilance can prevent." And it is said by Agnew, J., speaking for the court in *Meier* v. *Pennsylvania R. R. Co.,* 64 Pa. St. 225, 3 Am. Rep. 581, "that the above expresses the true measure of responsibility."

In *Laing* v. *Colder,* 8 Pa. St. 482, 49 Am. Dec. 533, Judge Bell said that though in legal contemplation the carrier does not warrant the absolute safety of his passengers, he is bound to the exercise of the utmost degree of diligence and care. The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable in damages.

One of the ablest of our text-writers and jurists, Judge Cooley, thus states the rule as to carriers of passengers. "Such carrier only undertakes that he will carry them without negligence or fault. But as there are committed to his charge for the time, the lives and safety of persons of all ages and of all degrees of ability for self-protection, and as the slightest failure in watchfulness may be destructive of life or limb, it is reasonable to require of him the most perfect care of prudent and cautious men, and his undertaking as to his passengers goes to this extent, that as far as human foresight and care can reasonably go, he will transport them safely. He is not liable if injuries happen from sheer accident or misfortune, where there is no negligence or fault, or where no want of caution, foresight, or judgment would prevent the injury. But he is liable for the smallest negligence in himself or his servants." (Cooley on Torts, 2d ed., 768, 769.) The learned author cites as sustaining his statements of the law a long list of cases which will be found in note 1 to page 769.

As said by Bellows, J., in *Taylor* v. *Grand Trunk R. R. Co.*, 48 N. H. 313, 2 Am. Rep. 229, "Upon grounds of public policy, also, the carrier of passengers is bound to exercise the highest degree of care and diligence. To his diligence and fidelity are intrusted the lives and safety of large numbers of human beings,"—and when passengers are carried by steam the demand for the utmost skill and diligence is especially required,—"for then in consequence of the greater speed, the hazards to life and limb are largely increased."

The same degree of responsibility must attach to one controlling and running an elevator. Persons who are lifted by elevators are subjected to great risks to life and limb. They are hoisted vertically, and are unable, in case of the breaking of the machinery, to help themselves. The person running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go. The law holds him to the utmost care and diligence of very cautious persons, and responsible for the slightest neglect. .

Such responsibility attaches to all persons engaged in employments where human beings submit their bodies to their control by which their lives or limbs are put at hazard, or where such employment is attended with danger to life or limb. The utmost care and diligence must be used by persons engaged in such employments to avoid injury to those they carry. The care and diligence required is proportioned to the danger to the persons carried. In proportion to the degree of danger to others must be the care and diligence to be exercised; where the danger is great, the utmost care and diligence must be employed. In such cases the law requires extraordinary care and diligence.

We know of no employment where the law should demand a higher degree of care and diligence than in the case of the persons using and running elevators for lifting human beings from one level to another. The

danger of those being raised is great. When persons are injured by the giving way of the machinery the hurt is always serious, frequently fatal; and the law should, and does, bind persons so engaged to the highest degree of care practicable under the circumstances. It would be injustice and cruelty to the public in courts to abate in any degree from this high degree of care. The aged, the helpless, and the infirm are daily using these elevators. The owners make profit by these elevators, or use them for the profit they bring to them. The cruelty from a careless use of such contrivances is likely to fall on the weakest of the community. All, including the strongest, are without the means of self-protection upon the breaking down of the machinery. The law, therefore, throws around such persons its protection, by requiring the highest care and diligence.

The carrier of passengers is under obligations to use the utmost care and diligence in providing safe, suitable, and sufficient vehicles for the conveyance of his passengers. (*Readhead* v. *Midland R. R. Co.*, L. R. 2 Q. B. 412; L. R. 4 Q. B. 379; *Jamison* v. *S. J. & S. C. R. R. Co.*, 55 Cal. 593; *Ingalls* v. *Bills*, 9 Met. 1; 43 Am. Dec. 346; *Taylor* v. *Grand Trunk R. R. Co.*, 48 N. H. 304; 2 Am. Rep. 229; *Caldwell* v. *R. I. etc. Co.*, 47 N. Y. 287; *Grand Rapids etc. R. R. Co.* v. *Huntley*, 38 Mich. 537; 31 Am. Rep. 321; *Baltimore etc. R. R. Co.* v. *Miller*, 29 Md. 252; *Virginia Central R. R. Co.* v. *Sanger*, 15 Gratt. 230; *Kelly* v. *N. Y. etc. R. R. Co.*, 109 N. Y. 44; *Herburt* v. *N. P. R. R. Co.*, 116 U. S. 651, 652.)

Railroads must keep pace with science and art and modern improvement in their application to the carriage of passengers, but are not responsible for the unknown as well as the new. (*Meier* v. *Penn. R. R. Co.*, 64 Pa. St. 225; 3 Am. Rep. 581.) In this case it is stated that the rule laid down in the second assignment of error is a correct summary of the law. The language used in the assignment of error referred to is this:

" That the rule in regard to carriers of passengers is this: The utmost care and vigilance is required on the part of the carrier. This rule does not require the utmost degree of care which the human mind is capable of imagining; but it does require that the highest degree of practicable care and diligence should be adopted that is consistent with the mode of transportation adopted. Railway passenger carriers are bound to use all reasonable precautions against injury of passengers; and these precautions are to be measured by those in known use in the same business which have been proved by experience to be efficacious. The company are bound to use the best precautions in known practical use. That is the rule,— the best precautions in known practical use to secure the safety of the passengers, but not every possible preventive which the highest scientific skill might suggest."

Railroad companies are bound to adopt the most approved modes of construction and machinery in known use in the business. If they fail to do so, and injury result in consequence, they are responsible. As is said in *Ford* v. *London and Southwestern R. R. Co.*, 2 Fost. & F. 730, the company "was bound to use the best precautions in known practical use to secure the safety of their passengers, but not every possible preventive which the highest scientific skill might have suggested."

In *Steinweg* v. *Erie R. R. Co.*, 43 N. Y. 123, 3 Am. Rep. 673, it is held that railway companies, as common carriers, are bound to have such vehicles and machinery for the transportation of goods as the improvements known to practical men and tested by practical use may suggest, but not to take every possible precaution which the highest scientific skill might suggest, nor to adopt any mere speculative and untried experiment.

As stated above, it is said in *Ingalls* v. *Bills*, 9 Met. 1, 43 Am. Dec. 346, that the carrier of passengers is respon-

sible for defects that might have been discovered upon the most careful and thorough examination.

In *Hadley* v. *Cross*, 34 Vt. 586, 80 Am. Dec. 699, the doctrine of *Ingall* v. *Bills, supra,* was applied to a livery-stable keeper letting a defective carriage, and he was held liable if the defect could have been discovered upon the most careful and thorough examination.

It was held in *Hegeman* v. *Western R. R. Co.,* 16 Barb. 353, that the carrier is bound to conduct his business with all the care which human prudence and skill could suggest, and the defendants in that case were held liable for injuries caused by a defect in a car made by a competent manufacturer, which defect was not discoverable upon a thorough examination after the car was finished, but might have been before, by bending the axle in which the defect was. This decision was affirmed in 13 N. Y. 9; 64 Am. Dec. 517. (See also *Caldwell* v. *New Jersey Steamboat Co.,* 47 N. Y. 287.)

In *Texas etc. R. R. Co.* v. *Hamilton,* 66 Tex. 95, the court said, in regard to a passenger carrier: "If any certain and satisfactory test is known which is within the reach of the company, it should be applied, and they should not in that case be excused if they rely upon a test which is clearly insufficient."

In relation to *tests,* it was said in *Hegeman* v. *Western R. R. Co.,* 13 N. Y. 26, 27, 64 Am. Dec. 517: "It is perfectly understood that latent defects may exist undiscovable by the most vigilant examination when the fabric is completed, from which the most serious accidents have and may occur. It is also well known, as the evidence in this suit tended to prove and the jury have found, that a simple test (that of bending the iron after the axle was formed and before it was connected with the wheel) existed by which it could be detected. This should have been known and applied by men 'professing skill in that particular business.' It was not known, or if known was not applied, by these manufacturers. It

was not used by the defendant, nor did they inquire whether it had been used by the builders. They relied upon an external examination, which they were bound to know would not, however faithfully prosecuted, guard their passengers against the danger arising from concealed defects in the iron of the axles or in the manufacture of them. For this omission of duty or want of skill the learned judge held, and I think correctly, that they were liable."

Here it is held that the test referred to should have been known and applied by men "professing skill in that particular business" (viz., that of making axles and wheels for railway cars). The case related to a broken axle. The defendants were held liable if the test was not known to the manufacturers, or if known, was not applied by them.

In the light of the foregoing well-settled rules of law, that carriers of passengers are responsible, as far as human care and foresight will go, for the utmost care and diligence of very cautious persons, and therefore for the slightest neglect; that they are bound for defects in the vehicles which they furnish which might have been discovered by the most careful examination, — we think the court below did not err in modifying the instruction under consideration, as pointed out above.

It is a most reasonable precaution imposed on such a carrier, of whom we consider the owner of an elevator one, to require him to test the vehicles or machinery used by him by the best known tests reasonably practicable. If such tests are not used, the carrier is wanting in the care and foresight required.

Nor are the defendants excused from the degree of care and diligence above pointed out by the fact that the elevator in use was constructed by a competent and skilled manufacturer, from whom they purchased it. The manufacturer was their agent or servant in the construction of the elevator, and they are responsible

for any want of care of the maker or builder. The obligation of care and foresight rests on the person using the elevator, and he cannot shift it from himself to another person.

This point is made and decided in *Hegeman* v. *Western R. R. Co.*, 16 Barb. 356, as also by the court of appeals of New York in the same case, where it was there heard.

In the case in 16 Barbour, the court, per Harris, J., said: "They [the defendants] gave evidence to show that they had purchased the car from a manufacturer of high reputation for the excellence and safety of the cars manufactured by him, and that, after employing all reasonable care and skill for the purpose of detecting any defect in the machinery, the defect in the axle, which was the cause of the accident, had remained undiscovered, and, in fact, could not be discovered by means of any examination which the defendants were able to make.

"The rule of law applicable to the evidence upon this branch of the case was very accurately stated by the learned judge at the circuit. After having distinctly laid down the general proposition that the defendants were not liable if they had exercised all reasonable care and diligence in providing a safe track and a safe engine and cars, and had properly supplied their train with a suitable number of competent and faithful men to take charge of the train, and those men had managed it in a careful and skillful manner, he proceeded to say, in respect to the defect in the axle, that the defendants were responsible for this defect to the same extent as if the axle had been manufactured by themselves. Of the soundness of this rule, I think there can be no doubt. From the very necessity of the case, the defendants are obliged to carry on their business through the instrumentality of agents. Some are employed to construct or keep in repair their roadway; others to construct or repair their engines and cars; and others, again, to operate such engines and cars upon the road. For neglect or

want of skill in any of these, the defendants, as prin-
cipals, are answerable to third persons.   Whether the
engine or car which they place upon the road for the
purpose of carrying passengers has been manufactured
in their own workshops by agents employed directly for
that purpose, or by a manufacturer engaged in the busi-
ness of supplying such articles for sale, they are alike
bound to see that in the construction no care or skill
has been omitted, for the purpose of making such en-
gine or car as safe as care and skill can make it.   When
such care and skill has been exercised, the defendant's
duty in this respect has been discharged.   If, on the
other hand, a defect exists in the construction which
might have been detected and remedied, they are an-
swerable for the consequences."

The same point was thus disposed of in the opinion of
the court in the same case in 13 N. Y. 26: "It was said
that carriers of passengers are not insurers.   This is true.
That they were not required to become smelters of iron or
manufacturers of cars in the prosecution of their busi-
ness.   This also must be conceded.   What the law does
require is, that they shall furnish a sufficient car to se-
cure the safety of their passengers by the exercise of the
'utmost care and skill in its preparation.'   They may
construct it themselves, or avail themselves of the ser-
vices of others; but in either case they engage that all
that well-directed skill can do has been done for the
accomplishment of this object.   A good reputation upon
the part of the builder is very well in itself, but ought
not to be accepted by the public or the law as a sub-
stitute for a good vehicle.   What is demanded, and what
is undertaken by the corporation, is not merely that the
manufacturer had the requisite capacity, but that it was
skillfully exercised in the particular instance.   If to this
extent they are not responsible, there is no security for
individuals or the public."

It was said of a coach proprietor by Alderson, J., in

*Sharp* v. *Gray*, 9 Bing. 457, that he is liable for all defects in his vehicle which can be seen at the time of construction, as well as for such as may exist afterward, and be discovered on investigation; if not, he might buy ill-constructed or unsafe vehicles, and his passengers be without remedy.

The above remarks apply with all their force to the proprietor of an elevator.

The reasonableness of the rule that the responsibility cannot be shifted to the manufacturer appears from the consideration that the law gives no remedy to the injured passenger against the manufacturer or builder of the elevator. There is no privity between the builder and the passenger.

The remarks of Hannen, J., in *Francis* v. *Cockrell*, L. R. 5 ·Q. B. 184, are especially appropriate here. In that case the plaintiff sued to recover for an injury occasioned by the fall of a grand-stand at a race course. The defendant owned the stand, but had contracted with another to build it. It was defectively constructed through the negligence of the contractor, and from the defect the fall occurred. The defendant was held liable. Hannen, J., said that the case was analogous to that of a carrier of passengers contracting with a builder to construct a car for him, where the builder was guilty of negligence in its construction. He said further: "In the ordinary course of things, the passenger does not know whether the carrier has himself manufactured the means of carriage or contracted with some one else for its manufacture. If the carrier has contracted with some one else, the passenger does not usually know who that person is, and in no case has he any share in the selection. The liability of the manufacturer must depend on the terms of the contract between him and the carrier, of which the passenger has no knowledge, and over which he can have no control, while the carrier can introduce what stipulations and take what sureties he may think

proper. For injury resulting to the carrier himself by the manufacturer's want of care the carrier has a remedy against the manufacturer; but the passenger has no remedy against the manufacturer for damage arising for a mere breach of contract with the carrier. (*Longmeid* v. *Holliday*, 6 Ex. 761; 20 L. J. Ex. 430; see *George* v. *Skivington*, L. R. 5 Ex. 1.) Unless, therefore, the presumed intention of the parties be that the passenger should, in the event of his being injured by the breach of the manufacturer's contract, of which he has no knowledge, be without remedy, the only way effect can be given to a different intention is by supposing that the carrier is to be responsible to the passenger, and to look for his indemnity to the person whom he selected, and whose breach of contract caused the mischief."

In *Francis* v. *Cockrell, supra,* the plaintiff was allowed to recover for the negligence of the contractor, a competent builder, though the defendant was not himself guilty of negligence, and was affirmed on this point in the exchequer chamber (L. R. 5 Q. B. 501). To the same effect are *Grote* v. *Chester and Holyhead R'y Co.*, 2 Ex. 251, and *Burns* v. *Cork and Bandon R'y Co.*, 13 I. R. C. L. 543.)

4. It is further argued that the court erred in giving the first instruction asked by plaintiff. The instruction is as follows: "That the defendant owed it as a duty to the persons using the elevator in their store, either as customers or by their invitation or request, to use all reasonable means and efforts to furnish good and well-constructed machinery, adapted to the purposes of its use, of good material, and of the kind which is found to be safest when applied to use; and while they were not required to seek and apply every new invention, they must adopt such as are found by experience to combine the greatest safety with practical use."

We think this is a direction that the defendants were bound to use all reasonable means and efforts to furnish

good and well-constructed machinery, adapted to the purpose of its use, and all reasonable means and efforts to furnish or provide it, of good material, and of the kind that is found to be the safest when applied to use; that the kind of machinery furnished and the material furnished must be of that kind which has been found by others using it or constructing such machinery to be safest in practical use. The latter portion of the instruction bears out this interpretation; it is that the defendants must adopt such inventions as are found by the experience of other persons to combine the greatest safety with practical use; yet while they are bound to do this, the law excuses them from seeking and applying every new invention. The instruction, as we understand it, is but a fair deduction from the rule that the defendants must use the utmost care and diligence to carry safely those who ride in their elevator, as far as human care and foresight will go, and while they do not engage for absolute safety, they do bind themselves and warrant that they will use the utmost care and diligence of very cautious persons, as far as human care and foresight will go, to provide such means of carriage as are above pointed out.

Like common carriers of passengers, they must keep pace with science, art, and modern improvement in supplying safe obtainable vehicles, machinery, and appliances for their use. (See 2 Redfield ·on Railways, 241, 242.) They must adopt the most improved modes of construction and machinery in known use in the business, and if they do not, and injury occur, they will be held responsible. (2 Redfield on Railways, 6th ed., 242.) As was said in *Hegeman* v. *W. R. Corporation*, 16 Barb. 348, "The defendants were bound to use every precaution which human skill and foresight could suggest to insure the safety of passengers." A like obligation rested on the defendants in this case. (See, on this point, *Smith* v. *New York etc. R. R. Co.*, 19 N. Y. 127; 75

Am. Dec. 305; *Steinweg* v. *Erie R. R. Co.*, 43 N. Y. 127; 3 Am. Rep. 673; *Bevere* v. *Delaware etc. Co.*, 13 Hun, 258; *Meier* v. *Pennsylvania R. R. Co.*, 64 Pa. St. 225, 227, 231; 3 Am. Rep. 581.)

We find no error in the giving of this instruction by the court below.

5. It is urged that the court below erred in allowing the witnesses Bangs and Ravekes to testify as to the instructions given the defendants and their employees with respect to running the elevator.

Bangs appears to have been a skilled mechanic, who had been engaged in putting up elevators. He had repaired the elevator of defendants several times. On one occasion when he was repairing this elevator he cautioned one of the defendants as to the mode in which they ran it. He told this defendant, when he was there repairing the elevator, about their using it very carelessly; that they ought to be more cautious; that the pressure should be shut off at a particular point.

Ravekes was one of the defendants, and he testified "that Bangs generally instructed us that we should always ease the water off as it was getting to the place to be stopped, and not let it run without that; that Bangs further told him what the effects would be of neglecting this."

The questions which brought out this testimony and the answers to the questions were objected to.

It would be strange to hold that this evidence was not admissible.

The defendants were bound to acquaint themselves with the best mode of running this elevator, so as to carry safely those who rode on it. They should have sought information diligently on this point. Making use of a contrivance for raising human beings vertically, if they failed to acquaint themselves with the safest mode of running it, would be of itself the grossest negligence. Any caution which they received should have

been most acceptable to them. Here they were cautioned by a skilled man that they were running the elevator carelessly.

The evidence was competent and material to show a knowledge by defendants that they were operating the elevator incautiously and carelessly. We cannot conceive that the *scienter* can be proved in any other mode that by information from others. Conceding that the evidence of Bangs was hearsay, it was of that character of hearsay which is admissible for the purpose for which it was allowed. Certainly the evidence of Ravekes, one of the defendants, was not hearsay. He testified to information conveyed to him material on the main issue in the case, viz., of negligence. What was said by Bangs to Ravekes was said in reply to inquiries by the latter, and the information was communicated by Ravekes to everybody else in the store. (On the point of admissibility, see 1 Greenl. Ev., sec. 101; 1 Wharton on Evidence, sec. 252.)

The above disposes of all the points discussed on the oral argument, and all, we presume, relied on to secure a new trial. We have nevertheless looked into all the other points discussed in the opening brief of appellants, and, after consideration, find no error in the rulings of the court below.

The judgment and order must be affirmed, and it is so ordered.

SHARPSTEIN, J., concurred.

McFARLAND, J., concurring.— I concur in the judgment of affirmance.

1. I concur in all that is said in the first point discussed in the opinion of Mr. Justice Thornton.

2. I think, also, that the court below did not err in striking the words "and to a moral certainty" out of the instruction asked by defendants. The words "moral

certainty," as found in section 1826 of the Code of Civil
Procedure, are certainly somewhat confusing, consider-
ing their celebrated use by Chief Justice Shaw in the
Webster case as part of the definition of belief beyond
" a reasonable doubt." It is evident, however, that the
words were not used in the latter sense in the section
referred to, else the well-recognized distinction between
the amount of evidence required for conviction in a
criminal case and the amount sufficient to determine an
issue in a civil action would be entirely obliterated. The
legislature must be held as stating, or trying to state, in
section 1826, the *general* difference between a mathemat-
ical, or strictly scientific, demonstration, and the kind of
proof usually obtainable in judicial trials. They did
not intend to use the words in that relation as synony-
mous with proof beyond a reasonable doubt. And this
is apparent from section 2061, which provides that the
court, on proper occasions, must instruct the jury,
among other things, "that in civil cases the affirma-
tive of the issue must be proved, and when the evidence
is contradictory, the decision must be made according to
the *preponderance* of evidence; that in criminal cases
guilt must be established beyond reasonable doubt." It
was sufficient, therefore, in the case at bar, for the court
to tell the jury that plaintiff must prove his case " by a
preponderance of evidence." To have added " and to a
moral certainty " would have tended to confuse and mis-
lead the jury.

But I do not entirely agree with the other reasons
which Mr. Justice Thornton gives for sustaining the
action of the court on this instruction. I think he
states the doctrine too broadly, that the mere happening
of an accident, *of itself*, proves the negligence of the
carrier. Of course, in many instances, the nature of
the accident, and the circumstances under which it oc-
curred, will, if unexplained, make a *prima facie* case of
negligence; but I do not take it to be established *as a*

*rule of law* that *any* accident by which a passenger is injured will have that effect. In *Boyce* v. *California Stage Co.*, 25 Cal. 468–470, there are some expressions (in the opinion of the court) which tend toward such an extreme doctrine; but they were not necessary to the decision of the case. In that case the circumstances showed extreme carelessness on the part of the driver of the coach. The court say: "At the point where the overturning occurred the road formed the arc of a circle. Instead of moving on the arc the team took the chord, and went so near the precipice as to allow the wheels to run over. . . . . One cannot read the evidence in connection with the diagram contained in the record without coming to the conclusion that the overturning which caused nearly fatal injuries to the plaintiff, and death to some of the other passengers, was the result of careless inattention on the part of the coachman in not keeping his team in the road. . . . . It is most probable, *from the evidence,* that his inattention was the result of drowsiness, induced by the hour and the use of too much liquor." But if, in such a case, the plaintiff should merely show that while a coach was going at a moderate gait along the middle of a good, wide, and commonly traveled road, it was suddenly overturned without any apparent cause, would those facts alone make out a case of negligence (which is always the gist of such an action) against the defendant?

3. I concur in the doctrine that the responsibility of a common carrier of passengers attaches to one who controls and runs an elevator used as appellants used the elevator by which respondent was injured.

I also concur in the conclusion that the court below did not err in giving the first instruction asked by plaintiff, or in adding to the ninth instruction asked by defendants the words "according to the best known tests *reasonably practicable*"; but I think that some of the cases cited by Mr. Justice Thornton, with apparent ap-

proval, in his discussion of those instructions, carry the rule concerning the application of tests beyond its legitimate reach.

On all other points I concur in the opinion of Mr. Justice Thornton.

Rehearing denied.