EMMA M. McGRELL, as Administratrix, etc., of MAGGIE MAY McGRELL, Deceased, Appellant, v. BUFFALO OFFICE BUILDING COMPANY, Respondent.

*Negligence — elevator car — liability of its owner for accidents — sudden starting of a car where a child is the passenger — doors to an elevator car.*

The relations between the owner and manager of an elevator and his passengers are similar to those existing between a common carrier and those carried by him.

Upon the trial of an action brought to recover damages resulting from the death of the plaintiff's intestate, caused, as alleged, by the improper construction and management of an elevator in a building belonging to the defendant, it appeared that the plaintiff's intestate was a child under ten years of age; that she entered the building for the purpose of visiting her mother, who was

employed in an office on the third floor of the building; that the child had never before been in the building and had never been in an elevator; that the elevator car had no door nor seats for passengers, and that the front of the elevator shaft, between the cornice over the door to the shaft and the next floor, was constructed for some feet of wrought iron vertical bars three and one-half inches apart.

It was shown that in this and other elevators passengers frequently lost their equilibrium when the car started; that the maximum speed of the car was eight feet a second, and that on the occasion of the accident the car reached its maximum speed after moving three feet.

The conductor, the only witness of the accident, testified that when the elevator had reached the cornice of the door of the elevator shaft, the deceased ran forward, caught hold of the bars of the elevator shaft, was caught between the car and bars and was killed.

*Held,* that the question whether the child voluntarily ran across the car and caught hold of the exposed bars of the elevator shaft, or whether, having lost her balance, she fell against the bars, was a matter sufficiently in doubt to require the submission of the question to the jury;

That under the circumstances it was a question for the jury to determine whether it was not a negligent act upon the part of the conductor to start the car at full speed without first warning the child and giving her some instructions as to how to protect herself, and whether the omission to provide the elevator car with a door did not, under the circumstances, indicate negligence on the part of the owner of the elevator.

APPEAL by the plaintiff, Emma M. McGrell, as administratrix, etc., of Maggie May McGrell, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 21st day of May, 1895, upon the dismissal of the complaint directed by the court after a trial at the Erie Circuit, before the court and a jury, and also from an order entered in said clerk's office on the 22d day of April, 1895, denying the plaintiff's motion for a new trial made upon the minutes.

*Wallace Thayer,* for the appellant.

*C. M. Bushnell* and *Porter Norton,* for the respondent.

LEWIS, J. :

Plaintiff's daughter, Maggie May McGrell, was killed while riding in an elevator in defendant's building in the city of Buffalo on the 23d day of April, 1894, and this action was brought by her mother, as administratrix, to recover the damages sustained by the next of kin of the deceased by her death. She was nine years and six

months old at the time of her death. The defendant's building was fire-proof and was occupied for offices. It was eleven stories in height and had two elevators; both of them were used for carrying passengers.

The one in question was so arranged that it could be used also for transporting furniture and safes, and for that purpose the doorway of the car was three feet and eight inches wide, which was wider than would have been necessary had it been intended for transporting passengers only. It was not provided with a door. The opening into the elevator well on the first floor of the building was but two feet eight inches wide. The elevator car was five feet and one inch by four feet and ten inches in size. Between the sides of the car and the walls of the shaft there was a space of three and one-half inches. The distance from the ground floor of the building to the first floor above was about fifteen feet. The door to the elevator shaft was seven and one-half feet high. Above the door was a wrought iron cornice. The front of the elevator shaft, between the cornice and the first floor above was constructed of wrought iron vertical bars, five and one-half feet long, one-fourth of an inch thick, and three-fourths of an inch wide, and were three and one-half inches apart; they were fastened at each end by a screw. There being no door to the car, there was nothing between the bars and the passenger who might be standing opposite the opening in the car as it passed the bars.

The elevator was operated by hydraulic power, and when in full motion moved at the rate of eight feet per second. The plaintiff was employed, at the time of the accident, in an office upon the third floor of the defendant's building. The deceased was left at home in the morning, and without her mother's knowledge or consent left her home and went to the defendant's building for the purpose of visiting her mother.

It was the first time she had ever been in the building, and the first time she had been in an elevator. She went into the rooms of the occupant of the first floor of the building, and made known her wish to go to her mother's room. She was directed to the janitor or superintendent of defendant's building; he took her to the elevator upon the first floor, and directed the young man in charge to take her to the plaintiff's room.

The deceased entered the car and took her place in the back part of it. She was the only passenger ; the car was started about one minute after she entered. The conductor was called as a witness by the plaintiff. He testified that Maggie was standing in the corner of the car as far from him as she could ; that after he set the car in motion, and it had reached the top of the doorway in the shaft, the deceased ran forward and caught hold of the bars of the elevator shaft above described. She was thrown down upon the floor of the car and her head was drawn in between the car and the vertical bars mentioned, the bars bending out sufficiently to allow her head to enter. That he at once stopped the car, but not in time to prevent the disaster, and the child was killed.

The conductor was the only witness who described what occurred in the car, and while he insisted that the deceased voluntarily ran across the car and seized hold of the bars, the manner of her falling, the position in which her body was found upon the floor of the car, showing that she probably took but one step before falling, and other circumstances described by the witness, presented a question of considerable doubt whether the deceased, in fact, voluntarily ran across the car and caught hold of the bars, or, as the car started, lost her equilibrium and stepped forward involuntarily to regain it, and in her efforts to save herself from falling, caught hold of the bars.

There was evidence tending to show that it was a frequent occurrence for passengers to lose their equilibrium in this and other elevators.

The conductor testified that he had operated elevators in other buildings in the city, which ran at a less speed than the defendant's ; that it was a frequent occurrence for people to lose their balance in them ; that on at least forty occasions he had noticed passengers who were compelled to step about in elevators in order to maintain an upright position as the car started ; that he had noticed such occurrence in the elevator in question, and that on one occasion a passenger in the defendant's elevator had lost his balance as the elevator started and fell over against the witness. Other witnesses testified that they had ridden in the elevator in question, and had frequently experienced a tendency to fall forward as the car started. As the conductor applied the power at the time in question, the car attained

its maximum speed when it had moved only about three feet. No question is raised as to the competency of the conductor to manage the elevator, or that the space between the platform of the elevator and the vertical bars was too large.

At the close of the plaintiff's evidence a nonsuit was granted and the question presented by this appeal is whether there were any questions of fact which should have been submitted to the jury. Many grounds of negligence on the part of the defendant are urged by the appellant's counsel. It is contended that the conductor unskillfully operated the car on the occasion in question; that there should have been a door to the car; that the front of the elevator shaft should have been solid wall instead of the vertical bars; that, under the circumstances, the conductor should have instructed the deceased how to protect herself, and warned her of the danger of her falling as the car started.

The relations between the owner and manager of an elevator and his passengers are similar to those between an ordinary common carrier and those carried by him. There seems to be no reason for any distinction between the two classes of carriers. The dangers incident to the former means of transportation are quite as great, if not greater, than are incident to travel by railways. Ray, in his work on Negligence, Common Carriers (§ 96, chap. 17), says: "There is no employment where the law should demand a higher degree of care and diligence than in the case of the persons using and running elevators for lifting human beings from one level to another."

The relations between carriers by elevators and their passengers are discussed in *Treadwell* v. *Whittier* (80 Cal. 574); *Mitchell* v. *Marker* (62 Fed. Rep. 139); *Goodsell* v. *Taylor* (41 Minn. 207).

It is manifest from the description of the elevator shaft and car, that there was danger that passengers would come in contact with these stationary vertical bars as the car was passing them, and by so doing might receive bodily injuries. Had the car been provided with a door, the accident in question would not have occurred.

The conductor was aware that the child was quite likely to lose her equilibrium if he started the car rapidly. He knew, or should have known, that she was liable to be thrown down on the floor of the car. His observation had taught him that strong adults were liable, as a car starts, to lose their balance, and were frequently compelled to step about in the car to prevent falling.

The evidence tended to show that the conductor started the car on this occasion with its usual rapidity. He was aware that the deceased was a mere child; that she did not possess the ability to care for herself that an adult person would under the circumstances.

There was no seat or railing in the car, but there were two projections into the body of the car, one on each side, which would have afforded a resting place for the child's hand.

Under ordinary circumstances, elevator conductors would not be expected to give instructions to their passengers, but here was a small child alone in the elevator and presumably unaccustomed to riding in one, and, under all the circumstances, we are of the opinion that it was a question which should have been submitted to the jury, whether it was not a negligent act on the part of the conductor to start the car at its full speed without first warning the deceased and giving her some instructions as to how to protect herself. It was also a question for the jury whether, under the circumstances, the omission to provide the elevator car with a door was not evidence of negligence on the part of the defendant.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

BRADLEY and WARD, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.